B104 (FORM 104) (08/07)

| ADVERSARY PROCEEDING COVER SHEET (Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER (Court Use Only) |
|---|---|

| PLAINTIFFS MARK JENCO 5 NEWELL STREET CHICOPEE MA 01013 | DEFENDANTS FRANK SAIA |
|---|---|
| ATTORNEYS (Firm Name, Address, and Telephone No.) GREG T SCHUBERT 413 746 1313 1365 MAIN ST SPRINGFIELD MA 01103 | ATTORNEYS (If Known) JOSEPH COLLINS 101 STATE STREET SPRINGFIELD MA 01103 |
| PARTY (Check One Box Only) □ Debtor    □ U.S. Trustee/Bankruptcy Admin ☑ Creditor    □ Other □ Trustee | PARTY (Check One Box Only) ☑ Debtor    □ U.S. Trustee/Bankruptcy Admin □ Creditor    □ Other □ Trustee |

CAUSE OF ACTION (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)

FRAUDULENT CONDUCT OF DEBTOR MAKES DEBT NONDISCHARGEABLE
SEE ATTACHED COMPLAINT AND BBO EXHIBITS

**NATURE OF SUIT**

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

FRBP 7001(1) – Recovery of Money/Property
□ 11-Recovery of money/property - §542 turnover of property
□ 12-Recovery of money/property - §547 preference
□ 13-Recovery of money/property - §548 fraudulent transfer
□ 14-Recovery of money/property - other

FRBP 7001(2) – Validity, Priority or Extent of Lien
□ 21-Validity, priority or extent of lien or other interest in property

FRBP 7001(3) – Approval of Sale of Property
□ 31-Approval of sale of property of estate and of a co-owner - §363(h)

FRBP 7001(4) – Objection/Revocation of Discharge
□ 41-Objection / revocation of discharge - §727(c),(d),(e)

FRBP 7001(5) – Revocation of Confirmation
□ 51-Revocation of confirmation

FRBP 7001(6) – Dischargeability
□ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
☒ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
□ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

(continued next column)

FRBP 7001(6) – Dischargeability (continued)
□ 61-Dischargeability - §523(a)(5), domestic support
□ 68-Dischargeability - §523(a)(6), willful and malicious injury
□ 63-Dischargeability - §523(a)(8), student loan
□ 64-Dischargeability - §523(a)(15), divorce or separation obligation (other than domestic support)
□ 65-Dischargeability - other

FRBP 7001(7) – Injunctive Relief
□ 71-Injunctive relief – imposition of stay
□ 72-Injunctive relief – other

FRBP 7001(8) Subordination of Claim or Interest
□ 81-Subordination of claim or interest

FRBP 7001(9) Declaratory Judgment
□ 91-Declaratory judgment

FRBP 7001(10) Determination of Removed Action
□ 01-Determination of removed claim or cause

Other
□ SS-SIPA Case – 15 U.S.C. §§78aaa et.seq.
□ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| □ Check if this case involves a substantive issue of state law | □ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☑ Check if a jury trial is demanded in complaint | Demand $ 200,000 |
| Other Relief Sought | |

B104 (FORM 104) (08/07), Page 2

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR<br>*FRANK SAIA* | BANKRUPTCY CASE NO.<br>*0 – 31336 HJB* | |
| DISTRICT IN WHICH CASE IS PENDING<br>*MASSACHUSETTS* | DIVISION OFFICE<br>*WESTERN* | NAME OF JUDGE |
| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
| PLAINTIFF | DEFENDANT | ADVERSARY<br>PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISION OFFICE | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF) | | |
| DATE | PRINT NAME OF ATTORNEY (OR PLAINTIFF) | |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 104, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 104 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs and Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party.** Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

UNITED STATES BANKRUPTCY COURT FOR THIS
DISTRICTOF MASSACHUSSETTS
WESTERN DIVISION

IN RE:
FRANK SAIA

CHAPTER 7
CASE NO. 0-31336 HJB

CASE NO.
 DEBTOR,


MARK JENCO, PLAINTIFF,

ADV. PRO:

v.

FRANK SAIA

 DEFENDANT.

## COMPLAINT

This is an action is commenced by Mark Jenco, hereinafter
("Jenco") pursuant to 11 U.S.C. __ 523 (a)(6) and Rule 7001 of
the Federal Rules of Bankruptcy Procedure objecting to the
discharge of claims of the Creditor, Mark Jenco.

### JURISDICTION

The Court has jurisdiction over this matter pursuant to the
provisions of 28 U.S.C __ 157(b)(1), (b)(2)(J), and 11
U.S.C__ 727(a)(2),(a)(3) and (a)(4), 11 U.S.C. __ 523 (a)(6).

## II. THE PARTIES

1. The Plaintiff, Mark Jenco, is a natural person with an
   address of #5 Newell Street, Chicopee, Massachusetts 01013.


2. The Defendant, Frank Saia, is a natural person with an
   address presently unknown to the plaintiff but on
   information and belief living in the Commonwealth of
   Massachusetts.

### III. ALEGATIONS OF FACT


6. On or about, the Defendant's filed Chapter 7 petition
with this Court on January 13, 2014.

7. Defendant's Chapter 7 petitions listed on Schedule F
the Plaintiff as a non-disputed creditor with an unknown
claim.

8. Attorney Gary Weiner was appointed Chapter 7 Trustee.

   The Original 341 meeting has held. At the 341 meeting
the Chapter 7 Trustee requested additional information
and/or documents.

9. On or about, December 22, 2009, [exhibit 4 hereto] the
Plaintiff entered into a written fee agreement with the
Defendant, Saia under which the Defendant Saia agreed to
provide legal services to Jenco in return for construction
equipment and labor on properties owned and operated by the
Defendant Saia. The Plaintiff, Jenco has filed suit in the
Hampden County Superior Court alleging misappropriation of
monies and a failure to exercise his fiduciary duties on
behalf of Jenco. See: Exhibit "A" attached hereto and
incorporated by reference.

15. On or about December 22, 2009 without legal excuse or
justification, willfully and intentionally misappropriated
monies given to pay creditors of Jenco and billed for legal
services unsupported per the agreement. Plaintiff further
alleges that the Defendant Saia changed the terms of the
agreement without his knowledge or consent. The plaintiff

says that in another matter which was presented to the
Board of Bar Overseers, Saia admitted to felonious conduct
of a similar nature and resigned his bar licensure rather
than face disbarment proceedings. See: Exhibit "B" attached
hereto and incorporated by reference.

17. As a direct, proximate and foreseeable result of the
willful and intentional actions of the Defendant, Saia the
Plaintiffs suffered substantial harm and damage both
financial and physical in nature. Currently, the state
lawsuit is stayed as a result of the Debtor's Chapter 7
proceeding herein.

## IV.   COUNT I
### CONCEALMENT OF ASSETS

26. All of the allegations in the proceeding paragraphs are
re-alleged.

27. The Debtors discharge should be denied under 11 U.S.C.
727 (a) (2). The Debtors with intend to delay or defraud the
plaintiff transferred and/or concealed property on information
and belief to his wife.

## VI. COUNT III
### KNOWINGLY AND FRAUDULENTLY MAKING A FALSE OATH

28. All of the allegations in the proceeding paragraphs
are re-alleged.
29. The Debtor's discharge should be denied under 11
U.S.C. __ 727 (a)(4) because the Debtor knowing and fraudulently
made false oaths on their schedules of Assets, Statement of
Financial Affairs and testimony in their 341 Meeting.

## VII. COUNT IV
### WILLFUL AND MALICIOUS INJURY

30. All of the allegations in the proceeding paragraphs
are re-alleged.

31. The Debtor's discharge of the Plaintiff's debts should be denied under 11 U.S.C. __ 523(a) (6) because the Debtor's willfully and maliciously caused injury to the plaintiff.


Wherefore, the Plaintiff requests that Judgment be entered in favor of the Plaintiff and that Defendant be denied a discharge, or in the alternative, that the debt owed by the Defendant to the Plaintiff be excepted from discharge. Plus any such other relief that this Court find just and proper.


Respectfully submitted,
By the Plaintiff
MARK JENCO

GREG I. SCHUBERT
BBO # 447340
Marketplace
1365 Main Street
Springfield, MA. 01103
413-746-1313


April 28, 2014



## COMMONWEALTH OF MASSACHUSETTS
### DEPARTMENT OF THE TRIAL COURT

HAMPDEN ss:

SUPERIOR COURT
# HDCV 2013-00805

---

MARK JENCO and MARY
JENCO
            Plaintiff

COMPLAINT AND DEMAND
FOR JURY TRIAL

        v.

FRANK SAIA
            Defendant

---

### Parties

1. The Plaintiff, MARK JENCO, is an individual with a usual place of residence at 5 Newell Street, Chicopee, Massachusetts; the plaintiff, MARY JENCO resides at 19 Downey Street, Chicopee, Massachusetts and is the mother of the plaintiff Mark Jenco.

2. The Defendant, FRANK SAIA, is a duly licensed attorney-at-law in the Commonwealth of Massachusetts, with a usual place of business at 1365 Main Street, Suite 400 Springfield, Massachusetts.

### Factual Background

3. On or about June 12, 2009, Defendant, Saia sent a letter to plaintiff, Mark Jenco specifying that Defendant, Saia sought the construction services that Mark Jenco possessed for a project owned solely by the Defendant, Saia. See: Exhibit "1" attached hereto and incorporated by reference. This relationship pursuant to the provision of contractor services continued throughout the legal representation of Mark Jenco and Attorney Frank Saia.

4. On or about November 2, 2009, the Plaintiff, Mark Jenco sought to retained the Defendant, Frank Saia in connection with the several civil matters. Attorney Saia had previously and contemporaneously represented Mr. Jenco's wife in a M.C.A.D. matter See: Exhibit "2" attached hereto and incorporated by reference. Defendant Saia undertook representation of Mark and Mary Jenco in an action by CNH Capital pursuant to equipment used by Mark Jenco in his construction business. Mary Jenco was the borrower on the note pertinent to said equipment.

5. On the same date, November 2, 2009, Attorney Terrance Ford on behalf of the Defendant, Saia requested a "reinstatement amount" on the delinquent mortgage concerning Mark Jenco's residential address of 5 Newell Street, Chicopee, Massachusetts. See: Exhibit "3" attached hereto and incorporated by reference.

6. On or about November 4, 2009 Saia receives a response from BAC, Home Loan Services, to the "reinstatement amount" as fifteen thousand one hundred seventy-five and seventy-nine cents [$15,175.79].

7. On or about December 18, 2009, Mary Jenco is served with a short order notice and preliminary injunction by CNH Capital pursuant to a finance agreement that she secured on the behalf of Mark Jenco for equipment that Mark Jenco was utilizing on behalf of Defendant, Saia and others. See: Exhibit "4" Legal Services-Fee Agreement, attached hereto and incorporated by reference.

8. Mary Jenco on or about December 23, 2009 retains the legal services of Defendant, Saia by payment of sum of fifteen hundred dollar retainer [$1500.00] for the purposes of representation in the CNH loan matter.

9. In the course of this civil representation of Mary Jenco, On March 10, 2010 Defendant Saia sent a 93A demand on behalf of Mary Jenco See: Exhibit "5" attached hereto and incorporated by reference.

10. The Defendant Saia on April 5, 2010 filed legal pleadings on behalf of Mark Jenco as an intervener in the previously noted civil matter See: Exhibit "6" attached hereto and incorporated by reference.

11. The Defendant Saia at a preliminary hearing represented to Mary and Mark Jenco that he would not precede in his representation of their interests absent the signing of a fee agreement and the delivery of funds in the amount of $1500.00. Mary Jenco secured the requested financial requirement and signed a purported fee agreement outside the courtroom on the day of the hearing December 22, 2009. See: Exhibit "4" referenced above. At the time of the execution of the agreement, the fee agreement was signed by Mary Jenco with the hourly fees to be charged left blank. The hourly charges for services were inserted after Mary Jenco signed the agreement and became the basis for alleged legal fees owed forthwith. See: Exhibit "7" Affidavit of Mary Jenco attached hereto and incorporated by reference.

12. On or about December 24, 2009 Mary Jenco delivers a bank draft in the amount of twenty eight thousand dollars [$28,000.00]. This sum was tendered for the reinstatement of the mortgage of Mark Jenco on the aforementioned Mark Jenko residential property in Chicopee, Massachusetts. See: Exhibit "8" attached hereto and incorporated by reference.

13. On January 4, 2010, Defendant, Saia, pays himself from the client escrow account for alleged legal services the sum of seven thousand seven hundred and seventy-five dollars.

Crediting fifteen hundred dollars to a total legal fee accrued of purportedly of nine thousand two hundred and seventy-five dollars [$9,275.00]. At no time throughout the representation of Mark and Mary Jenco has the defendant, Saia tendered contemporary time records supporting alleged legal work performed.

14. On or about February 9, 2009, Defendant Saia sends a fax to "To Whom it May Concern" stating that Frank Saia is representing Mark Jenco and his wife, Renata in the attempt to reinstate their mortgage.

15. On April 22, 2010, the Defendant Saia sends an invoice that purports to represent hours actually spent. The invoice as stated previously provides no contemporaneous time records to support the billing submitted.   See: Exhibit "9" attached hereto and incorporated by reference. At this time the contractual relationship between Mark Jenco and Saia begins to evolve into a contractor [Jenco] providing contractor services to the defendant, Saia's financial interests. Eventually, invoicing by Mark Jenco precipitates a "bartering" response from the Defendant, Saia. See: Exhibit "10" attached hereto and incorporated by reference.

16. On or about April 8, 2011. Mark and Mark Jenco retain the services of Kathleen Moore – Kocot in the legal matter of CN H Capital America LLC. V. Jenco Docket HDCV 2009-01212. C&H Capital was the originator of a loan to Mark and Mary Jenco relating to construction equipment purchased to effectuate construction on a project benefiting the Defendant, Frank Saia.

17. After Attorney Kocot's review of this matter, she advised Mary and Mary Jenco that she believed an issue of professional negligence should be evaluated by tort counsel familiar with professional negligence issues. .

18. Thereafter, Mark and Mary Jenco retained the legal services of this filing counsel to effectuate their claims relative to the history that this matter presents. Counsel, Greg T. Schubert was retained through a letter of engagement on or about May 23 2013. See: Exhibit "11" attached hereto and incorporated by reference

19. The Defendant, Saia on or about June 26, 2013, sent the following written communications to counsel, Greg T. Schubert claiming perjurous conduct by the plaintiff herein, Mark Jenco. See: Exhibit "12" attached hereto and incorporated by reference.

20. The Plaintiff, Mark Jenco was granted the authority to employ, Greg T. Schubert as Special Counsel, and proceed with the filing of this action in the Commonwealth of Massachusetts Superior Court by the Order of Boroff, J. United States Bankruptcy Court on October 16, 2013 in case number 11-31097. See: Exhibit "13" attached hereto and incorporated by reference.

## COUNT I
### BREACH OF CONTRACT

21. The Plaintiff restates and incorporates by reference paragraphs 1 through 20, as set forth herein.

22. The Plaintiff, Mark Jenco entered seasonably into a contract with the defendant, Frank Saia to provide services of a construction nature and throughout the period of the time specified as relevant hereto, to wit January 2009 to date, Jenco has performed contractual services for which he has not been compensated for.

23. Defendant Saia has benefitted from the construction services of Mark Jenco, and has failed to compensate plaintiff, Mark Jenco for those services.

24. WHEREFORE, the Plaintiff demands judgment against the Defendant in an amount commensurate with the damages alleged together with interest thereon and costs.

## COUNT II
### LEGAL MALPRACTICE

25. The Plaintiff restates and incorporates by reference paragraphs 1 through 24, as set forth herein.

26. The Defendant, Saia expressed an intention and a promise to represent Mark and Mary Jenco in return for construction services to be performed by Jenco on properties and interests owned and benefitting Defendant, Saia, solely.

27. The Defendant, Saia as a licensed attorney at lawyer in the Commonwealth of Massachusetts held a fiduciary duty to both plaintiffs, Mary Jenco and Mark Jenco.

28. The Defendant owed the Plaintiff's Mary Jenco and Mark Jenco a duty to provide legal services of a complete and competent nature in connection with the Plaintiff's civil actions.

29. The Defendant failed to provide care, skill and diligence in connection with the aforesaid representation for the Plaintiff and before the Court.

30. As a result of the Defendant's failure to properly advise the Plaintiffs, the Plaintiff's lost property interests and such failure necessitated the plaintiffs to expend monies beyond that would have been required to effectuate their interests.

31. WHEREFORE, the Plaintiff demands judgment against the Defendant in an amount commensurate with the damages alleged together with interest thereon and costs.

## Count III
### FRAUD

32. The Plaintiff restates and incorporates by reference paragraphs 1 through 31, as if set forth herein.

33. At all times relevant hereto the Defendant continued a fraudulent scheme to effectuate continuing construction work by the plaintiff, Mark Jenco on property interests held solely for the benefit of the defendant, Saia.

34. The Defendant failed to ever make payment for construction work undertaken by plaintiff, Mark Jenco, other than what has been previously pled in paragraphs 15, 16 and 22 set forth previously.

35. As evidenced by multiple letters, the Defendant, Saia threatened to abandon his representation of the plaintiffs, Mark and Mary Jenco. See: Exhibit 5 referenced above. Also see: Exhibit 14 attached hereto and incorporated by reference.

36. WHEREFORE, the Plaintiff demands: judgment for compensatory damages, both financial and emotional; costs and attorney's fees; such other relief as this Court might in its discretion award.

### Jury Demand

The Plaintiff demands trial by jury on all issues that are amenable to said tribunal.

The Plaintiffs,
By his and her Counsel,

Greg T Schubert
1365 Main Street, Suite 250
Springfield, Mass. 01090
Telephone: (413) 746-1313
FAX: (413) 746-3102
BBO #44740
murderone@msn.com

Dated: November 19, 2013

# SAIA LAW FIRM, LLC



106 State Street
Springfield, Massachusetts 01103

Attorneys:
Frank R. Saia, J.D.
Terry M. Ford, Esq.

Telephone: (413) 736-3611
                   1-800-LAWSAIA
Fax: (413) 736-4531
E-mail: SaiaLawFirm@hotmail.com

June 12, 2009

Memo

To: Mark Jenco (tel 887-7585) Copy to: Alan Griffin (413-786-3565)

RE: Taking down houses and removing debris and grinding concrete
    using Alan Griffin as equipment operator (free in return for legal services
    rendered on Goat Case) and either using drop off buckets or dump truck
    rentals  and grinder rental and dmolition equipment rentals
Dear Mark:

Alan Griffin has offered to operate equipment,I will be obligated to
rent. We did this on unit No: 18 in 2008.    I pulled the permits and
got the hazardous substances waiver following inspection.

He is willing to do this for free as bater for the legal work I am doing for
him and his wife on the GOAT case in the Land Court in Boston, currently
pending.

He will need dump truck(s) and concrete grinders, and bucket rental for
debris, as well as equipment rental to remove the buildings.

I told him of your interest and he said he thought the two of you could
work together to accomplish this job on my low budget,

There is no financing until, I can get re-zoning through the City for 132
dwelling units of single, duplex, and multi family homes under RESIDENCE "C"
zoning, in which I shall need all the political muscle you can muster .

In addition, there is pending in the Housing Court our counterclaim for
inverse condemnation damages, and removal of real estate taxes.
Beal Bank owns 3 & 15 and lots 8,9,10. I own all the land and the other units.
I have sent a bill to get Beal Bank to pay its share of the costs of take
down and Counterclaim, and engineering for RE-Zoning.
I will keep you apprised. In the meantime, call   each other and plan to do the wc
together.
Sincerely,

Frank R. Saia,J.D.

*Full Service Law Firm*
*Since 1979*

# SAIA LAW FIRM, LLC

106 State Street
Springfield, Massachusetts 01103



**Attorneys:**
Frank R. Saia, J.D.
Terry M. Ford, Esq.

**Telephone: (413) 736-3611**
1-800-LAWSAIA
Fax: (413) 786-4531
E-mail: SaiaLawFirm@hotmail.com

Memo                    3/24/10

Copy Dave Gaby

To: Mark Jenco

RE: #560 Springfield St. Wilbraham, Ma  quote at $73,000  for water line and
for leach field, foundation and culvert for entry/exit to Springfield Street
must be reduced to $59,000.00  price  with 30% at start, 30% at rough
completion, and final 40% upon building department approval

Dear Mark:

Here is the problem. The bank will allow $59,000 for the

above referenced work or will require us to seek another contractor

who will do the necessary site work above, and accept the draw down

payments as proposed.  I have pledged the $89,900  sale of the first

floor unit at #173 Marion St.  and will only get $45,000.00 which

must be paid back at closing June 30, 2010.

I must get the boxes out of the Modular Home Building on Appleton St.

Holyoke,Ma BEFORE April 30, 2010 installing the boxes in #560 Spfld St.

Wilbraham (if you can make it ready by then and if Dave Gaby can get 3 of these

boxes to nest  leaving only one to go to the Ludlow Farm storage  with plastic

boat type wrap to protect it.

I am paying $24,000 for the Boxes and  $10,000 for the performance bond and

$59,000 for the site development work  which means we will have to sell

the other unit at #173 Marion St. at $129,900 to keep the #560 Springfield St.

Wilbraham development going.  Will you sharpen your pencil to meet the

$59,000 required price?

Sincerely,

Frank R. Saia, J.D.

*Full Service Law Firm*
*Since 1979*

**CNH CAPITAL**

### RETAIL INSTALLMENT SALE CONTRACT AND SECURITY AGREEMENT
( Fixed Rate)

Dealer No. 89887
Credit Application No. 99887

| "Buyer's" Legal Name(s), Street Address, City, State, Zip Code | | "Seller" (Dealer's Legal Name and Address) |
|---|---|---|
| MARY JENCO<br>18 DOWNEY<br>CHICOPEE, MA 01020 | ☑ Individual/Sole Proprietorship<br>If So, State of Principal<br>Residence:   MA<br>☐ General Partnership<br>If So, State of Chief<br>Executive Office:<br>☐ Corporation/LLC/LP<br>If So, State In Which Formed:<br>Organization ID No.: | MAC MACHINE LLC<br>798 PROMOS AVE<br>FOLCROFT, PA 19032 |

County/Parish   HAMPDEN
Social Security No.   XXX-XX-7478
or Taxpayer ID No.

The undersigned Buyer (if more than one, collectively called "Buyer") hereby purchases from Seller and Seller hereby sells to Buyer the following goods (the "Equipment") at the Time Sale Price and upon the terms set forth herein:

| NEW*<br>OR USED | "EQUIPMENT"<br>(Make and Type) | MODEL | SERIAL NUMBER | HOURS | "CASH SALE PRICE" |
|---|---|---|---|---|---|
| U | Crawler Loader | 826g | EXR00473 | | 350,000.00 |
| U | Crawler Loader | 6725G | 260X3CRG3008 | | 600,000.00 |
| | | | | | |
| | | | | | |

The above Equipment is purchased for ☑ commercial/business use ☐ agricultural use. "New Equipment is unused equipment, a rental unit or a demonstrator for which the manufacturer will apply all or a portion of a new equipment warranty; this Equipment may have been manufactured in a year prior to the year of purchase.   TOTAL   $110,000.00

| MAKE | "TRADE-IN EQUIPMENT"<br>TYPE | MODEL | SERIAL NUMBER | HOURS | GROSS<br>ALLOWANCE<br>(in Dollars) | SECURED<br>DEBT DUE<br>(in Dollars) | NET TRADE-IN<br>ALLOWANCE<br>(in Dollars) |
|---|---|---|---|---|---|---|---|
| | | | | | N/A | N/A | N/A |
| | | | | | | | |
| | | | | | | | |

**NO WARRANTY.** The Equipment is sold AS IS except for any applicable manufacturer's express, written warranty. If any manufacturer's express warranty applies to the Equipment, such warranty is restricted to the manufacturer's written, limited warranty provided separately to Buyer. Seller and manufacturer make no other representation or warranty, express or implied, and specifically exclude the implied warranties of merchantability and fitness for particular purpose.* Neither Seller nor manufacturer will be liable for incidental or consequential damages resulting from a breach of the express warranty or any implied warranty imposed by law.*

*Some states do not allow these limitations and exclusions, and they shall not apply to the extent such limitations or exclusions are not allowed by applicable state law.*

**PREPAYMENTS.** Buyer may make a partial prepayment of the unpaid time balance hereunder (the "Time Balance") at any time, but any partial prepayment will not change or defer Buyer's next scheduled payments. If Buyer prepays the full unpaid Time Balance on construction equipment for commercial/business use, Buyer shall pay a prepayment fee of up to $150, unless such fee is prohibited by applicable law.

**LATE CHARGES/DEFAULT RATE/RETURNED CHECKS.** Buyer shall pay a late charge on each payment more than 10 days past due at the highest amount permitted by applicable law. Buyer shall pay interest on the unpaid balance after maturity (by acceleration or otherwise) at the highest rate permitted by applicable law. If a check is returned for any reason, Seller or Assignee may charge Buyer a returned check processing fee as established by Seller or Assignee from time to time not to exceed the maximum permitted under applicable law.

**EXTENSIONS AND REFINANCING.** If Seller or Assignee extends, defers or refinances any payments due under this Agreement, Seller or Assignee may, at its option, increase the Time Price Differential Rate.

**SECURITY INTEREST AND COLLATERAL.** Buyer hereby grants to Seller a security interest in the Equipment, and in all improvements, parts and accessories belonging to the Equipment, and all substitutions, replacements, products, (such as insurance proceeds) and all accessions related to the Equipment (the Equipment and such items are collectively referred to herein as the "Collateral"), to secure payment and performance of all existing and future obligations of Buyer under this agreement (the "Agreement") or any other agreement between Buyer and Seller, between Buyer and Assignee or any affiliate of Assignee (the "Obligations"). Loss of or damage to the Equipment shall not release Buyer from any of the Obligations.

Upon request, Buyer shall take any action reasonably deemed necessary by Seller to protect and enforce Seller's interest in the Collateral or rights under this Agreement. Buyer is authorized to execute the Collateral wherever located at any reasonable time or times. Buyer authorizes Seller to insert in this Agreement, or amend any financing statement or this registration documentation to reflect, the serial and/or model numbers of the Equipment if unknown at the time this Agreement is executed and to correct any errors in such numbers or any other errors in the description of the Equipment.

**BUYER REPRESENTS THAT THE EQUIPMENT IS NOT BEING PURCHASED FOR FAMILY, HOUSEHOLD OR PERSONAL USE.**

NOTICE TO THE BUYER:
1. DO NOT SIGN THIS BEFORE YOU READ THE WRITING ON THE ADDITIONAL PAGES, EVEN IF OTHERWISE ADVISED.
2. DO NOT SIGN THIS IF IT CONTAINS ANY BLANK SPACES.
3. YOU ARE ENTITLED TO AN EXACT COPY OF ANY AGREEMENT YOU SIGN

ADDITIONAL PROVISIONS CONCERNING RIGHTS AND DUTIES OF THE PARTIES ON THE ADDITIONAL PAGES OF THIS AGREEMENT ARE A PART OF THIS AGREEMENT. THE FIRST PAGE MUST BE SIGNED, AND ALL OTHER PAGES INITIALED BY THE BUYER(S).

I agree to the foregoing. I have received and examined the Equipment, which is in good operating order and condition and is as described. I acknowledge receipt of a copy of this Agreement. I agree to purchase the Equipment described above on the terms of this Agreement.

X _Mary Jenco_
Buyer/Buyer's Representative                        Title (If applicable)
11-30-2008   MARY JENCO
Date                   Print Name

X
Buyer/Buyer's Representative                        Title (If applicable)

Date                   Print Name

X _Mac Machine_
Seller's Representative
11-30-2008   MAC MACHINE LLC
Date   11, ?  Print Name   Andrey Zinshi

61004A Rev. 9/06 Previous editions may not be used.          CNH CAPITAL COPY          Page 1 of 8

**CNH CAPITAL**

Dealer No. 89987
Credit Application No. 89957
Buyer Name MARY JENICO

## STATEMENT OF TRANSACTION

| | | | |
|---|---|---|---|
| 1. Cash Sale Price | 1. $ | | 110,000.00 |
| 2. Cash Down Payment | $ | 22,000.00 | |
| Net Trade-In Allowance | $ | N/A | |
| Manufacturer's Rebate | $ | N/A | |
| Total Down Payment | 2. $ | | 22,000.00 |
| 3. Unpaid Balance of Cash Sale Price (1 minus 2) | 3. $ | | 88,000.00 |
| 4. Other Charges | | | |
| (a) Taxes (Not In Cash Price) | $ | | N/A |
| (b) Official Fees | $ | | 20.00 |
| (c) UCC Filing Service Fee | $ | | 12.50 |
| (d) Administrative Fee | $ | | 500.00 |
| (e) Physical Damage Insurance | $ | | N/A |
| (f) Credit Life Insurance | $ | | N/A |
| (g) Credit Accident & Health Insurance | $ | | N/A |
| (h) Liability Insurance | $ | | N/A |
| (i) Manufacturer's Extended Warranty Plan | $ | | N/A |
| (j) Extended Service Protection Plan | $ | | N/A |
| (k) (Other) | $ | | N/A |
| Total Other Charges | 4. $ | | 532.50 |
| 5. Unpaid Balance (Amount Financed) (3+4) | 5. $ | | 88,532.50 |
| 6. Time Price Differential (Finance Charge) | 6. $ | | 37,114.44 |
| 7. Time Balance to be Paid (Total of Payments) (5+6) | 7. $ | | 125,646.94 |
| 8. Time Sale Price (Total Sale Price) (1+4+6) | 8. $ | | 147,646.94 |

9. The Unpaid Balance hereof shall bear Finance Charges computed at a per annum rate (the "Time Price Differential Rate" or "APR") equal to **14.74** % (this is a FIXED RATE contract).

10. Date APR begins accruing:

| Mo. | Day | Yr. |
|---|---|---|
| 11-30-2008 | | |

Buyer agrees to pay to the order of Seller the Time Balance (line item 7) in accordance with the following schedule:

| NO. OF PAYMENTS | PERIOD OF PAYMENTS | AMOUNT OF EACH PAYMENT | BEGINNING MM/DD/YYYY |
|---|---|---|---|
| 84 | 1 MONTHS | $ 2,064.13 | 12/31/2008 |
| 1 | 1 MONTHS | $ 2,063.77 | 11/30/2015 |

The total "Secured Debt Due" is $ _____ N/A

The secured debt on the Trade-In Equipment is owed to:

Lender Name _____   Acct. No. _____
_____   Phone No. _____
Lender Address _____
Lender City _____ State _____ Zip _____
Payoff Good Through: _____

☐ If checked, Seller represents that the above debt has been paid.

Buyer hereby conveys to Seller all right, title and interest in the Trade-In Equipment free and clear of all encumbrances except as noted above.

**GUARANTY:**
The undersigned guarantees the prompt performance of Buyer's Obligations under the Agreement, and all modifications and extensions thereof, including prompt payment of all sums when due. The undersigned shall, immediately upon demand, pay any sum due under the Agreement and all modifications and extensions thereof, without setoff. The undersigned hereby waives notice of any modifications, amendments, or extensions of the Agreement, and of Buyer's nonperformance or breach of the Agreement. The payment obligations under this Guaranty are the direct, primary, and continuing obligations of the undersigned and the undersigned's heirs, successors and assigns, and not merely a guaranty of collection. Capitalized terms used in this Guaranty have the same meaning given to them in the Agreement.

Guarantor Signature: _Mary Jenico_   Address: _19 Downey St._
Print Name: _MARY JENICO_   City, State, Zip: _Chicago, MA 01020_

(X) _____
Buyer's Initials

**CNH CAPITAL**

Dealer No. __89867__
Credit Application No. __89957__
Buyer Name __MARY JENCO__

## STATEMENT OF TRANSACTION

Buyer agrees to pay to the order of Seller the Time Balance (line item 7) in accordance with the following schedule:

| NO. OF PAYMENTS | PERIOD OF PAYMENTS | AMOUNT OF EACH PAYMENT | BEGINNING MM/DD/YYYY |
|---|---|---|---|
| 60 | 1 MONTHS | $ 2,084.15 | 12/31/2008 |
| 1 | 1 MONTHS | $ 3,003.27 | 1/30/2013 |

| | | | | |
|---|---|---|---|---|
| 1. Cash Sale Price | | 1. $ | $110,000.00 | |
| 2. Cash Down Payment | $ | 22,000.00 | | |
| Net Trade-in Allowance | $ | N/A | | |
| Manufacturer's Rebate | $ | N/A | | |
| Total Down Payment | | 2. $ | 22,000.00 | |
| 3. Unpaid Balance of Cash Sale Price (1 minus 2) | | 3. $ | 88,000.00 | |
| 4. Other Charges | | | | |
| (a) Taxes (Not in Cash Price) | 4 | | N/A | |
| (b) Official Fees | $ | | 20.00 | |
| (c) UCC Filing Service Fee | $ | | 12.50 | |
| (d) Administrative Fee | $ | | 500.00 | |
| (e) Physical Damage Insurance | $ | | N/A | |
| (f) Credit Life Insurance | $ | | N/A | |
| (g) Credit Accident & Health Insurance | $ | | N/A | |
| (h) Liability Insurance | $ | | N/A | |
| (i) Manufacturer's Extended Warranty Plan | $ | | N/A | |
| (j) Extended Service Protection Plan | $ | | N/A | |
| (k) (Other) | $ | | N/A | |
| Total Other Charges | | 4. $ | 532.50 | |
| 5. Unpaid Balance (Amount Financed) (3+4) | | 5. $ | 88,532.50 | |
| 6. Time Price Differential (Finance Charge) | | 6. $ | 37,114.44 | |
| 7. Time Balance to be Paid (Total of Payments) (5+6) | | 7. $ | 125,646.94 | |
| 8. Time Sale Price (Total Sale Price) (1+4+6) | | 8. $ | 147,646.94 | |

The total "Secured Debt Due" is $ __N/A__

The secured debt on the Trade-in Equipment is owed to:

Acct. No. _____
Lender Name _____
Phone No. _____
Lender Address _____
Lender City _____ State ____ Zip ____
Payoff Good Through: _____

☐ If checked, Seller represents that the above debt has been paid.

Buyer hereby conveys to Seller all right, title and interest in the Trade-in Equipment free and clear of all encumbrances except as noted above.

9. The Unpaid Balance hereof shall bear Finance Charges computed at a per annum rate (the "Time Price Differential Rate" or "APR") equal to __14.74__ % (this is a FIXED RATE contract).

10. Date APR begins accruing: __11-30-2008__
Mo.   Day   Yr.

**GUARANTY:**
The undersigned guarantees the prompt performance of Buyer's Obligations under the Agreement, and all modifications and extensions thereof, including prompt payment of all sums when due. The undersigned shall, immediately upon demand, pay any sum due under the Agreement and all modifications and extensions thereof, without default. The undersigned hereby waives notice of any modifications, amendments, or extensions of the Agreement, and of Buyer's nonperformance or breach of the Agreement. The payment obligations under this Guaranty are the direct, primary, and continuing obligations of the undersigned and the undersigned's heirs, successors and assigns, and not merely a guaranty of collection. Capitalized terms used in this Guaranty have the same meaning given to them in the Agreement.

X Guarantor Signature: _Mary Jenco_    Address: _19 Downey St._
Print Name: _MARY JENCO_    City, State, Zip: _Chicopee, MA 01020_

(X) ____ 
Buyer's Initials
61004A Rev. 9/06 Previous editions may not be used.    CNH CAPITAL COPY    Page 2 of 5

**CNH CAPITAL**

Dealer No. _____

Credit Application No. _____

Buyer Name   MARY JENCO

## ADDITIONAL PROVISIONS

1. **Assignment.** Seller will assign this Agreement to CNH Capital America LLC (hereinafter "Assignee"). Buyer acknowledges that Seller has the right to assign this Agreement, that all rights and benefits but no obligations (if any) of Seller under this Agreement may be exercised by Assignee and that no obligations (if any) of Seller pass to Assignee. Upon receipt of notice from Assignee with instructions for payment, Buyer shall make all payments due under this Agreement directly to Assignee. This Agreement shall be binding on and inure to the benefit of Buyer and Seller and their respective heirs, personal representatives, successors or assigns; provided, however, that Buyer may not assign its obligations under this Agreement to any person without Assignee's prior written consent.

2. **Notification of Change in Residence, Principal Office, or Organizational Form.** If Buyer changes (a) its state of principal residence, or (b) the state in which its chief executive office is located, or (c) the state in which its corporation, limited liability company or limited partnership is organized, or (d) its form of organization (such as from an individual to a corporation), Buyer will notify Assignee in writing promptly, but in no event more than thirty days after any such change.

3. **Waiver of Defenses Against Assignee; Indemnification.** Buyer will not assert against Assignee any claim or defense which Buyer may have against Seller or the manufacturer of the Equipment. Buyer agrees that its obligation to make payments will not be subject to, and it will not make any claim against Assignee for breach of any representation, warranty or condition with respect to the Equipment and that its obligation to pay Assignee all amounts under this Agreement is absolute and unconditional without abatement, reduction, set-off, counterclaim or interruption for any reason whatsoever, notwithstanding any breach of alleged breach of any representation, warranty or condition with respect to the Equipment or any dispute which now or hereafter arises between Buyer and Seller or any other person. Buyer shall indemnify and hold harmless Seller, Assignee and their officers, directors, employees and agents from and against any damage, loss, theft or destruction of the Equipment or any part thereof, and from and against any and all fees, damages, injuries, claims, demands, costs and expenses (including without limitation reasonable attorneys' fees and expenses) of any kind and nature, arising out of or connected with the use, condition (including without limitation, all defects whether or not discoverable by Buyer, Seller or Assignee) or operation of the Equipment or any part thereof. Buyer shall promptly notify Assignee of any loss, damage, theft, destruction, injury, claim, demand, cost or expense related to the Equipment or the Equipment of which Buyer has notice.

4. **Buyer's Covenants.** Buyer shall (i) keep the Equipment in the county of Buyer's address set forth on page 1 of this Agreement and not remove the Equipment from such address, except temporarily in connection with its ordinary use, unless Assignee consents in writing; (ii) maintain the Equipment in good condition and repair and not permit its value to be impaired; (iii) keep the Collateral free of all liens, encumbrances and security interests of persons other than Assignee; (iv) defend the Collateral against all claims and legal proceedings by persons other than Assignee; (v) pay and discharge when due all taxes, fees, levies and other charges upon the Collateral; (vi) pay when due all taxes arising from the purchase of the Equipment under this Agreement, excluding any taxes based upon Seller's net income; (vii) use Equipment solely in the conduct of Buyer's business; (viii) ensure Equipment will be used solely within the intended uses of the manufacturer during the term of this Agreement; (ix) not sell, lease or otherwise dispose of the Equipment nor permit the Equipment to become an accession to other goods or a fixture; (x) not permit the Equipment to be used in violation of any law, regulation or policy of insurance; and (xi) strictly follow the terms of Provision 1 of this Agreement.

Each individual executing this Agreement represents and warrants that he or she has the requisite power and authority to enter into this Agreement and execute all related documents, to perform its obligations and consummate the transactions contemplated under this Agreement and related documents and that the execution and delivery of this Agreement and all related documents and the consummation of the transactions under this Agreement have been duly authorized by the Buyer.

5. **Insurance.** Buyer shall keep the Equipment and Seller's and its assignee interest in it insured against fire, theft, physical damage and other hazards under policies listing Assignee as loss payee or as an additional insured, with such provisions, for such amounts (but not less than the unpaid balance outstanding under this Agreement) and by such insurers as shall be satisfactory to Assignee from time and time, and shall furnish to Assignee evidence of such insurance satisfactory to Assignee. Such insurance shall provide at least 30 days written notice of cancellation, lapse or expiration to Assignee. Buyer assigns (and directs any insurer to pay) to Assignee Buyer's interest in the proceeds of all such insurance and any premiums refund and Assignee may, at its option, apply such proceeds and refunds to any unpaid balance of the Obligations, whether or not due, and/or to repair or restore the Equipment, returning any excess to Buyer. Buyer must make all payments due under this Agreement, whether or not the Equipment is insured or uninsured. Assignee is authorized, in the name of Buyer or otherwise, to make, adjust and/or settle claims under any insurance on the Equipment, or cancel the same after the occurrence of an event of default.

If Buyer purchased physical damage insurance that is financed under this Agreement, Buyer hereby requests and authorizes Seller (provided Seller is properly licensed to do so) or Seller's designee; (a) to arrange physical damage insurance for the benefit of Seller and Buyer that covers physical damage to the Equipment, (b) to replace or otherwise modify such insurance as Seller deems appropriate and (c) to be Buyer's attorney-in-fact to make claim for, receive payment of and execute and endorse any negotiate all insurance, checks or drafts received in payment of loss or damage under the insurance. This Agreement includes and hereby incorporates by reference any insurance and Extended Service Plan Addendum signed in connection with this Agreement.

STATEMENT TO BUYER: THE PHYSICAL DAMAGE INSURANCE PURCHASED UNDER THE TERMS OF THIS AGREEMENT COVERS ONLY LOSS OF OR DAMAGE TO THE EQUIPMENT. LIABILITY INSURANCE COVERAGE FOR BODILY INJURY AND PROPERTY DAMAGE CAUSED TO OTHERS IS NOT INCLUDED AS PART OF THE PHYSICAL DAMAGE INSURANCE. BUYER UNDERSTANDS THAT IF INSURANCE IS FINANCED UNDER THIS AGREEMENT, PRE-PAYMENT OF BUYER'S OBLIGATIONS OR TERMINATION OF THIS AGREEMENT MAY RESULT IN LOSS OF INSURANCE COVERAGE.

If Buyer purchased liability insurance that is financed under this Agreement, Buyer hereby requests and authorizes Seller (provided Seller is authorized to so) or Seller's designee to arrange for the liability insurance to be issued.

6. **Modifications and Waivers.** This Agreement sets forth the entire understanding between Seller and Buyer. No modification, amendment or extension of this Agreement and no waiver of any provision of this Agreement shall be valid unless in writing and signed by the parties and a waiver of any default hereunder by Seller shall not constitute a waiver of any other prior or subsequent default, except that Buyer authorizes Seller to insert in this Agreement the serial number and/or model number of any Equipment if the information is unknown when this Agreement is executed or to correct any errors in such numbers or any other patent errors in the description of the Equipment.

7. **Authority of Assignee to Perform for Buyer.** If Buyer fails to perform any of the Obligations set forth in this Agreement (including, specifically but without limitation, the purchase of insurance), Assignee may, at its option, in Buyer's name or otherwise, take any such action, including, without limitation, signing Buyer's name or paying any amount so required, and all costs and expenses incurred by Seller or Assignee in connection therewith shall form part of the Obligations and shall be payable by Buyer upon demand with interest from the date of payment by Seller or Assignee at the highest rate permitted by law.

8. **Default.** Buyer shall be in default under this Agreement if any of the following occurs:

(a) Buyer fails to pay when due any of the Obligations, or to perform any other obligation of Buyer in this Agreement or in any renewal or refinancing of this Agreement;

(b) a Buyer dies, ceases to exist, becomes insolvent or the subject of bankruptcy, insolvency or liquidation proceedings, attempts to assign this Agreement or attempts to remove, sell, transfer, further encumber, part with possession of or sublet any Equipment;

(c) any warranty or representation made by Buyer to induce Seller or Assignee to extend credit to Buyer, under this Agreement or otherwise, is false in any material respect when made or Buyer fails to perform any covenant under this Agreement;

(d) Buyer fails to maintain applicable required insurance or fails to comply with the requirements of any such insurance;

(e) any other event occurs that causes Seller or Assignee, in good faith, to consider that payment or performance of the Obligations is impaired or that the Equipment is at risk; or

(f) the Equipment is impounded or confiscated by any federal, state or local governmental authority.



Buyer's Initials

51004A Rev. 6/06 Previous editions may not be used.                CNH CAPITAL COPY                Page 3 of 5

**CNH CAPITAL**

| | |
|---|---|
| Dealer No. | 89857 |
| Credit Application No. | 89857 |
| Buyer Name | MARY JENCO |

9. **Expenses.** To the extent not prohibited by law, Buyer shall reimburse Seller or Assignee for any expense incurred by Seller or Assignee in protecting or enforcing their rights under this Agreement, including, without limitation, reasonable attorneys' fees and legal expenses and all expenses of taking possession, transporting, holding, repairing, refurbishing, preparing for disposition and disposing of the Collateral, and all expenses and costs incurred in collecting the Obligations, and all such expenses shall form part of the Obligations.

10. **Conflict with Law.** Any provision of this Agreement prohibited by applicable law shall be ineffective to the extent of the prohibition without invalidating the remaining portions of this Agreement. The validity, construction and enforcement of this Agreement are governed by the laws of the state in which the Seller is located. All terms not otherwise defined have the meanings assigned to them by the Uniform Commercial Code.

11. **Authorization to Execute and File Financing Statements and Lien Documents.** Buyer hereby authorizes Seller or Seller's designee to execute and file financing statements, and any motor vehicle title, registration and lien notification documentation, and any amendments thereto on behalf and in the name of Buyer to evidence Seller's security interest in the Collateral.

12. **Time Price Calculations.** If this is a variable rate contract, the Prime Rate for a given calendar month shall be the rate designated as the "Prime Rate" as published in The Wall Street Journal on the twentieth day of the prior calendar month (or on the next day published if not published on the twentieth day). If The Wall Street Journal ceases publication permanently or no longer publishes a "Prime Rate", the Prime Rate shall mean the prime loan rate of any federally chartered bank selected by Assignee. The payments, including Time Price Differential (Finance Charge) indicated herein, have been calculated using the Time Price Differential Rate (APR) in effect at the commencement of this Agreement and indicated herein. The final payment shall be recalculated to reflect increases/decreases in the Prime Rate during the remaining term. The Time Price Differential Rate (APR) shall never be less than 0%.

For all contracts, the Time Price Differential Rate (APR) shall be calculated for the actual number of days elapsed, using a daily rate determined by dividing the annual rate by 365. Buyer shall make all payments in lawful money of the United States of America.

13. **Remedies upon Default.** Upon the occurrence of any event of default, Seller shall have all rights and remedies provided by the Uniform Commercial Code or any other applicable law and Seller may, at its option: (i) declare all Obligations immediately due and payable (excluding the unearned Time Price Differential) without notice or demand, nor any waiver of intent to accelerate or notice of acceleration; (ii) take possession of the Collateral, without notice or hearing, and, where permitted by law, Buyer expressly waives any right to notice or a prior hearing; (iii) render the Equipment unusable; (iv) require Buyer to assemble the Collateral and make it available to Seller at any convenient place designated by Seller; or (v) sell (including at wholesale) or otherwise dispose of the Collateral at public or private sale for cash or on credit terms, without notice unless required by law. If notice is required by law, ten (10) days' notice to Buyer shall be deemed reasonable notice. All rights and remedies may be exercised by Seller either separately or in combination and any action taken by Seller to recover payment from Buyer of the Obligations shall not limit Seller's rights with respect to the Collateral. Seller may apply all proceeds of reduction of the Collateral to such part or parts of the Obligations as Seller may decide. If there is a deficiency, Buyer will pay the amount of the deficiency upon demand. To the extent permitted by law Buyer waives notice of dishonor, presentment and demand as to this Agreement.

---

The undersigned authorizes CNH Capital America LLC or any assignee ("CNH Capital") to initiate withdrawals from the account designated below and maintained with the bank identified below by any means agreed upon by CNH Capital and the bank, or to withdraw by electronic fund transfer from said account, sums due CNH Capital pursuant to retail contracts or leases. The undersigned further authorizes the bank to take all actions necessary to effect such withdrawals and transfers. The undersigned may cancel these authorizations by providing CNH Capital written notice, but any such cancellation will become effective five days after CNH Capital receives the notice. CNH Capital may cancel this authorization at any time by written notice.

Customer Name (as it appears on the payment notices)

| Address | | City | | State | | Zip | |
|---|---|---|---|---|---|---|---|

Customer's Bank Name

| Bank Address | | City | | State | | Zip | |
|---|---|---|---|---|---|---|---|

Customer Account Number

☐ I prefer to use my checking account. I have enclosed a voided check.

Routing #_____ Account #_____

☐ I prefer to use my savings account. I have confirmed with my bank the routing number and my withdrawal slip is enclosed.

Routing #_____ Account #_____

Be sure to date and sign this form.

Date _____ Signature _____

Date _____ Signature _____

X _____
Buyer's Initials

81204A Rev. 8/08 Previous editions may not be used.          CNH CAPITAL COPY

**CNH CAPITAL**

| | |
|---|---|
| Dealer No. | 99987 |
| Credit Application No. | 99987 |
| Buyer Name | MARY JENCO |

## ASSIGNMENT

Dealer (hereinafter "Assignor") hereby assigns all its rights, title and interest in and to the Agreement and the Equipment to CNH Capital America LLC (hereinafter "Assignee"), under terms also described in the Retail Finance Agreement or other documents (collectively hereinafter "Agreement") executed by the Assignor and Assignee.

Assignor warrants and represents as follows: (a) all statements contained in the Agreement, including, but not limited to, the trade-in and down payment information, are true and correct and Assignor did not provide either the trade-in or the down-payment; (b) the Agreement is a valid and binding obligation arising out of a bona-fide obligation in the ordinary course of business and is fully enforceable according to its terms; (c) the collateral is as represented to the Buyer; (d) Assignor made all disclosures required by law, and in the manner required by law prior to Buyer's execution thereof; (e) Buyer is not a minor and has the capacity to contract; (f) Assignor has obtained, or caused to be obtained, a properly perfected first priority security interest (or, in Quebec, a first ranking movable hypothec) in the collateral or has delivered the title, or caused the title to be delivered, to Assignee or noted, or caused to be noted, Assignee's lien on the title to the collateral, whichever applies; (g) as of the date of the Agreement, Assignor has verified that the Buyer has obtained the insurance required by the applicable Agreement and has valid proof of such verification; (h) Assignor has a properly completed and signed credit application from the Buyer; (i) the collateral was not delivered to the Buyer until credit approval has been obtained from the Assignee and the Agreement has been properly and fully completed by Buyer and Assignor; (j) title to the collateral is vested in the Assignor, free of all liens and encumbrances, and Assignor has the right to assign said title, and any property received in trade for the collateral is free of all liens and encumbrances; (k) the collateral has been paid in full or will be paid in full with Agreement proceeds; (l) Assignor is (and at all times will be) solvent and operating in the ordinary course of business; (m) the Agreement is not subject to any defense, counterclaim or setoff (or compensation in Quebec), except to the extent enforceability may be limited by bankruptcy, receivership, insolvency or moratorium laws, or by other similar laws of general application; and (n) all Agreements (other than Assignee's forms) comply with all applicable state, provincial and federal laws.

Assignor hereby unconditionally agrees to purchase the Agreement from Assignee upon demand for the full amount then unpaid whether the Agreement shall then be, or not be, in default if Buyer or any other person makes a claim against Assignee alleging facts that could constitute a breach of any of the foregoing warranties. Assignor shall assume the defense of such claims and shall indemnify and hold Assignee harmless from all loss, cost and expense arising therefrom. In addition, the Assignor includes the provisions, as outlined in the Dealer Handbook or Retail Finance Agreement, of the box checked below by Assignor which sets forth the Assignor's obligation to Assignee.

The liability of the Assignor, shall not be affected by any extension, renewal, or other change in the time of the payment of the Agreement, nor any change in the manner, place or terms of the payment thereof, nor the release of, not settlement or compromise with any party liable for the payment thereof or the release or non-perfection of any security thereunder. Assignee shall not be bound to exhaust its recourse against Buyer or any other person nor any security Assignee may at any time have, before being entitled to payment from Assignor hereunder. Assignor waives notice of the acceptance of this Assignment and notices of non-payment and non-performance of the Agreement and any other notices required by the law and waives all setoffs and counterclaims. This Assignment shall become effective upon delivery of the Agreement to Assignee or upon Assignee's payment of the purchase price therefor, whichever first occurs.

ENDORSEMENT CODES     ☑ N    ☐ R    ☐ F    ☐ O
OTHER ENDORSEMENT EXPLANATION

| | | | |
|---|---|---|---|
| PROCEEDS DIST. | ☐ WNLB (excludes payoffs) | $ | |
| | ☑ CK/ACH | $ | |

X _____
Dealer's Representative

11-05-2008     MAC MACHINE LLC
Date     Print Name

ENDORSEMENT CODES: N = Non-Recourse; R = Repurchase; F = Full Recourse; O = Other

**🛑 STOP**     **COMPLETE THE FOLLOWING CHECKLIST BEFORE PROCEEDING**     **🛑 STOP**

To expedite funding, please verify that the following items are completed:

_____ Buyer(s) name is **exact** legal name and physical address

_____ All shaded areas are manually completed, including:

_____ **Buyer(s)** signature and initials

_____ **Dealer** signature

_____ Additional required documentation (if applicable):

_____ Guaranty form for corporations completed, **signed** and **included**

_____ MED/TIB listing CNH Capital as lienholder, **signed** and **included**

_____ Automatic payment plan enrollment form completed, **signed** and attached with voided customer check or withdrawal slip

_____ Cross collateralization form completed, **signed** and **included**

_____ For your dealership records:

_____ Original **signed** customer credit application

_____ Proof of customer PDI insurance coverage, if customer providing own PDI insurance

## THANK YOU FOR YOUR BUSINESS

61004A Rev. 8/06 Previous editions may not be used.          CNH CAPITAL COPY          Page 5 of 5

TERRY M. FORD, ESQ.
106 STATE STREET
SPRINGFIELD, MA 01103
Tel. 413-736-3611
Fax. 413-736-4531



# Fax

| | | | |
|---|---|---|---|
| **To:** | Harmon Law Office | **From:** | Terry M. Ford, Esq. |
| **Fax:** | (617) 244-7304 | **Pages:** | 1 (Including cover) |
| **Phone:** | (617) 558-0500 | **Date:** | 11/2/2009 |
| **Re:** | Mark P. Jenco | **CC:** | |
| | 5 Newell Street, Chicopee, MA | | |

☐ **Urgent**    ☐ **For Review**    ☐ **Please Comment**    ☑ **Please Reply**    ☐ **Please Recycle**

Dear Sir/Madam:

Please be advised that this office has been retained in regard to the mortgage on the above-referenced property. Could you please provide me with the loan a reinstatement amount as of November 1, 2009? In addition, is the lender willing to enter into a loan modification? Thank you.

Please do not hesitate to call if you have any questions.

Sincerely,



Terry M. Ford

## CONFIDENTIAL TRANSMISSION

The information contained in this electronic message is privileged and confidential information intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copy of this message is strictly prohibited. If you have received this message in error, please notify us immediately by telephone and return it to us at the above-listed address.

## Legal Services Fee Agreement

I, _Mary Jenco_ _____ of

_Saar Law Firm_ _____, the "Client", hereby agrees to retain

_____, Massachusetts, the "Firm"/"Attorney",

in connection with _Lawsuit by CNH Capital America LLC_

1. The Firm hereby acknowledges receipt of $ _1,500⁰⁰_ as an initial retainer in this matter and, in consideration of the payment thereof, agrees to provide legal services in connection therewith. The initial retainer paid herein shall be applied against actual legal services performed for the "CLIENT" and for costs and expenses incurred.

2. It is agreed by and between the Client and the Firm that the retainer paid herein by the Client shall be applied against legal services actually performed for the Firm by the Client, which services shall be charged at the following standard hourly rates:
   - (a) Partners         $ _350_ to $ _____
   - (b) Associates       $ _250_ to $ _____
   - (c) Paralegals       $ _150_ to $ _____

3. It is understood and agreed that the final bill to be rendered by the Firm shall, in addition to reflecting the time expended, take into account the factors prescribed by the Supreme Judicial Court to be considered as guides when determining the reasonableness of fees for legal services; including the following:
   - (a) The time and labor required, the novelty and difficulty of the questions involved and the skill requisite to perform the legal service properly.
   - (b) The fee customarily charged in the locality for similar legal services.
   - (c) The amount involved and the results obtained.
   - (d) The time limitations imposed by the client or by the circumstances.
   - (e) The nature and length of the professional relationship with the client.
   - (f) The experience, reputation and ability of the lawyer or lawyers performing the services.

4. Interim billings may be submitted to the Client from time to time in the event the time charges of the Firm exceed the initial retainer. All interim billings shall be due and payable upon receipt unless otherwise stated. Failure to pay interim billings promptly will permit the Firm after notice to the Client to terminate its representation of the Client. It is understood that the hourly time charges include but are not limited to: court appearances, telephone conferences, office conferences, legal research, depositions, review of file materials and documents sent or received, preparation for trials, hearings and conferences, drafting of pleadings or instruments, correspondence and office memoranda.

5. The Client agrees to assume and pay for all out-of-pocket disbursements incurred in connection with this matter (e.g. filing fees, witness fees, travel, sheriff's and constable's fees, expenses of depositions, investigative expenses and other incidental expenses); and the Firm agrees to obtain the Client's prior approval before incurring any disbursement in excess of $100.

6. In the event that, upon either the completion of the within matter or the termination of the Firm's representation of the Client, the total cost of the legal services performed by the Firm shall be less than the amount of any retainer paid by the Client, the balance shall be refunded to the Client by the Firm.

7. In some cases the Court awards counsel fees to one party and orders the other party to pay the amount awarded, this is solely in the discretion of the Court and cannot be relied on with certainty.

   Also, in some cases if there is a settlement agreed to by both parties thereby avoiding a contested trial, the settlement contract may provide that one of the parties will contribute an agreed amount towards the other party's legal expenses.

   In the initial stages of a case it is impossible to predict whether either of the above situations will materialize and therefore no representation is made in this agreement that any contribution by the other party will be obtained towards the client's legal expenses.

   In the event, however, that one of such contributions is obtained for the benefit of the client, the amount in question will be credited against the firm's final bill to the client.

We, the Client and the Firm, have read the above Fee Agreement on this _22_ day of _Dec._ ~~190~~ and understand its terms and both have signed it as their free act and deed. _2009_

_Mary Jenco_
                                                    **Client**

_Om. LT L_

... hereby agrees to retain Massachusetts, the "Firm" or "Attorney",

in connection with _Lawsuit By CNH Capital America LCC_

1. The Firm hereby acknowledges receipt of $ _1,500.00_ as an initial retainer in this matter and, in consideration of the payment thereof, agrees to provide legal services in connection therewith. The initial retainer paid herein shall be applied against actual legal services performed for the "CLIENT" and for costs and expenses incurred.

2. It is agreed by and between the Client and the Firm that the retainer paid herein by the Client shall be applied against legal services actually performed for the Firm by the Client, which services shall be charged at the following standard hourly rates:

   (a) Partners       $ _350.00_ to $_____
   (b) Associates      $ _250.00_ to $_____
   (c) Paralegals      $ _150.00_ to $_____

3. It is understood and agreed that the final bill to be rendered by the Firm shall, in addition to reflecting the time expended, take into account the factors prescribed by the Supreme Judicial Court to be considered as guides when determining the reasonableness of fees for legal services; including the following:

   (a) The time and labor required, the novelty and difficulty of the questions involved and the skill requisite to perform the legal service properly.
   (b) The fee customarily charged in the locality for similar legal services.
   (c) The amount involved and the results obtained.
   (d) The time limitations imposed by the client or by the circumstances.
   (e) The nature and length of the professional relationship with the client.
   (f) The experience, reputation and ability of the lawyer or lawyers performing the services.

4. Interim billings may be submitted to the Client from time to time in the event the time charges of the Firm exceed the initial retainer. All interim billings shall be due and payable upon receipt unless otherwise stated. Failure to pay interim billings promptly will permit the Firm after notice to the Client to terminate its representation of the Client. It is understood that the hourly time charges include but are not limited to: court appearances, telephone conferences, office conferences, legal research, depositions, review of file materials and documents sent or received, preparation for trials, hearings and conferences, drafting of pleadings or instruments, correspondence and office memoranda.

5. The Client agrees to assume and pay for all out-of-pocket disbursements incurred in connection with this matter (e.g. filing fees, witness fees, travel, sheriff's and constable's fees, expenses of depositions, investigative expenses and other incidental expenses); and the Firm agrees to obtain the Client's prior approval before incurring any disbursement in excess of $100.

6. In the event that, upon either the completion of the within matter or the termination of the Firm's representation of the Client, the total cost of the legal services performed by the Firm shall be less than the amount of any retainer paid by the Client, the balance shall be refunded to the Client by the Firm.

7. In some cases the Court awards counsel fees to one party and orders the other party to pay the amount awarded, this is solely in the discretion of the Court and cannot be relied on with certainty.

   Also, in some cases if there is a settlement agreed to by both parties thereby avoiding a contested trial, the settlement contract may provide that one of the parties will contribute an agreed amount towards the other party's legal expenses.

   In the initial stages of a case it is impossible to predict whether either of the above situations will materialize and therefore no representation is made in this agreement that any contribution by the other party will be obtained towards the client's legal expenses.

   In the event, however, that one of such contributions is obtained for the benefit of the client, the amount in question will be credited against the firm's final bill to the client.

   We, the Client and the Firm, have read the above Fee Agreement on this _22_ day of _Dec._ ~~199~~ _2007_ and understand its terms and both have signed it as their free act and deed.

_Mary Jensco_
Client

_Thomas C. Sam_

**SALA LAW FIRM, LLC**

Springfield, Massachusetts 01108



Attorneys:
Frank R. Sala, J.D.
Terry M. Ford, Esq.

Telephone: (413) 736-3611
1-800-LAWSAIA
Fax: (413) 736-4531
Email: SalaLawFirm@hotmail.com

March 6, 2010

Richard LaPinski
L & L Property Services
287 Piper Road
West Springfield, Ma 01089

Skyline Repo Service
Larry Goldburg
PO Box 1292
Easthampton Ma 01027

RE: Demand for Relief under MGLc 93A Mark Jenco/Smith & Wesson interference with
favorable contract by competitor using false impersonation and repo person
not using appropriate equipment to repossess xxxxxxxxxxxxxxxxxxxxxxxxxxxxxx
Ford 2008 F350 owned by Donald And Mary Jenco        with plow and sander

Dear Sir(s)

I represent Jenco Property Management Services in their complaint
against the two you for interference with a favorable contractual snow plowing
relationship between JENCO and Smith & Wesson.

Specifically, you were caught on video tape with Mr. Jenco's leased equipme
Caterpillar front end loader chained to a dump truck at the security exit    from his
from the Smith & Wesson parking lot on December 10th ,2008.                parents

The truck is not an appropriate vehicle for a licensed repossession
person or company. The use of a competitors equipment  to repossess a xxxxxxxxxFord F
front end loader which is required equipment in the contract rises to the level
of an unfair and deceptive business practice by one competitor for snow plowing
work against another, as well as a wrongful interference with a favorable
contractual relationship valued at $195,000.00 per year for two years. The renewal
is also in doubt even though the prior contractor had the two year renewable contract
for 20 years.  Finally, the loader itself is valued at $90,000,000 $60,000.00
pickup                                          with all the addons

C 93A MGL provides you with a opportunity to settle this matter without a fair
offer of settlement within 30 days of this letter.  We believe. $25,000.00 EACH for
a total of $50,000.00 is a fair amount for the damages suffered to date, including $3500
property damage to the loader while chained to the impersonating vehicle.

Should you fail to make a fair offer of settlement a Judge in the Superior
Court of Hampden county is empowered to  issue a judgment up to treble damages plus
attorney's fees and costs of the action. I look forward to hearing from you.

Sincerely,

Frank R. Sala, J.D.
Attorney Frank LaPinski Jenco

Full Service Law Firm
Since 1979

# SAIA LAW FIRM, LLC

273 State Street
Springfield, Massachusetts 01103



Attorneys:
Frank R. Saia, J.D.
Terry M. Ford, Esq.

Telephone:  (413) 736-3611
           1-800-LAWSAIA
Fax: (413) 736-4531
E-mail: SaiaLawFirm@hotmail.com

December   15, 2010   617-660-0380   Fax to Lisa Magno

Dept of Revenue
Fraud Dept
200 Arlington St.
Chelsea, Ma 02150
Citizen Complaint
Tel: 617-887-6780

Dear Ms Magno:

        I am enclosing the following documents:

1. Bill of Sale from Caruso Companies to Jenco Property Maintenance Services
   MARK Jenco, Buyer  for $78,500.00      November 17, 2008
2. Bill of sale from Caruso Companies to MacMachines LLC BUYER for $78,500.00.
                                          November 17, 2008
3. Retail installment Sale Contract and Security Agreement Buyer: Mary Jenco
   Seller MacMachine LLC  price $88,000.00     November 30, 2008
   CNH Capital America, LLC  financing

It does not appear that no sales tax has been paid to the commonwealth of
Massachusetts, D.O.R.

Further, it appears there was a mark up of $10,000.00 of which CNH got $500.00
Administrative fee; MacMachine llc got $ 1,900.00 and the salesman Anthony Lis
got $ 3,350(60% of the balance of $5,590.00) and Broker Anthony Zanghi got $2,236.
after paying the 1st month's finance charge for the buyer to CNH Capital America,1

     In effect, my client Mary Jenco overpaid by $10,000.00 when the deal
was reconfigured to Mac Machine,LLC to Mary Jenco which CNH Capital America, llc
says the Bill of Sale to Mary Jenco is the  RETAIL INSTALLMENT SALE CONTRACT
AND SECURITY AGREEMENT.

My question is CNH Correct? Was about the Bill of Sale from Caruso to Mark Jenco
Does the DOR regards that as a Bill of Sale upon which sales tax is due?

Sincerely,

Frank R. Saia, J.D.
Attorney for Mary Jenco

Enclosures

*Full Service Law Firm*
Since 1979

COMMONWEALTH OF MASSACHUSETTS

HAMPDEN, ss

SUPERIOR COURT DEPARTMENT
OF THE TRIAL COURT
C.A. NO. 2010-00297-B

JPMORGAN CHASE BANK, N.A.
            Plaintiff

v.

~~MARY JENCO~~ and DONALD A. JENCO,
            Defendants

ORDER RE: PRELIMINARY INJUNCTION

This action came on to be heard at this sitting upon the return of an order of notice to show cause why the application for preliminary injunction should not be granted. It is hereby ORDERED AND ADJUDGED: that the application under prayers 1 and 2, of the APPLICATION FOR PRELIMINARY INJUNCTION, are hereby granted:

1. That the Defendants, their agents, servants, attorneys, nominees and assignees be restrained from causing or permitting the stripping, impairment, sale, transfer, assignment, encumbering, removal, concealment or any other disposition of 2008 Ford F350 Pickup 4WD, VIN 1FTWW31R78EB37880, pending further order of this Court;

2. That the Defendants be ordered: (a) to identify the location of said 2008 Ford F350 Pickup 4WD, VIN 1FTWW31R78EB37880, chassis and accessories; (b) to deliver said Vehicle and accessories forthwith to the Plaintiff and (c) to refrain from interfering in any way with the Plaintiff's entry upon property owned or leased by the Defendants, or entry upon a certain parking lot owned or controlled by Smith & Wesson, for the purpose of obtaining and securing possession of said Vehicle and accessories and removing same from said Vehicle.

By the Court (McDonald            , J.)

Entered: 9/16/10

C. Brian McDonald, Justice

\singer\jenco\prelim.doc

# SAIA LAW FIRM, LLC

273 State Street
Springfield, Massachusetts 01103



Attorneys:
Frank R. Saia, J.D.
Terry M. Ford, Attorney for Mary Jenco

Telephone:  (413) 73█-████
1-800-LAW-████
Fax:  (413) 736-4531
E-mail: SaiaLawFirm@████████

Memorandum                          October 15, 2010

To: Smith & Wesson
      Attention: Jeff East      FAX: 413- 733-0810      Tel: 413- 747-3526

Dear Mr. East:

Confirming our telephone conversation, this is to certify that Smith &

Wesson will undertake "no risk" in again awarding its snow removal contract to Mark

Jenco d/b/a  Jenco Property Maintenance Services. Mr. Jenco is the Lessee of the

pickup truck equipped with snow plow. He has arranged to buy out the Lessor's interest

from the Finance Company which is seeking to repossess and sell that vehicle.

If you have any questions or concerns, please call me on my cell phone: 413-538-0736

Sincerely,

Frank R. Saia, J.D.
Attorney for Mark Jenco

*Full Service Law Firm*
*Since 1979*

COMMONWEALTH OF MASSACHUSETTS

HAMDPEN, SS.

SUPERIOR COURT DEPT.
CIVIL ACTION NO.: 10 297

JP MORGAN CHASE BANK, N.A.
     Plaintiff

Vs.

MARY JENCO AND DONALD A. JENCO.
    Defendants.

## AFFIDAVIT OF MARK JENCO of 5 Newell Street, Chicopee, MA

1. My name is Mark Jenco, I am the son of the defendants/plaintiff-in-counterclaim : Mary and Donald Jenco.

2. I went to purchase the subject vehicle at Balise and was told that my credit was not good enough but that if my parents purchased it, their credit was good enough and I would pay the monthly payments.

3. I negotiated a new contract and forbearance with the representative of the Plaintiff in the first week of December, 2009 and sent a double payment in consideration of that agreement.

4. Notwithstanding my agreement the plaintiff double crossed me and sent the repossession man to the Smith & Wesson parking lot. He impersonated me, chained the subject pickup truck with plow mounted on it, started to tow it away using my competitor's dump truck, not an authorized rep vehicle.

5. Smith & Wesson guards let these imposters onto the parking lot but finally realized they were not me or my employees and demanded the dump truck operator unchain the pickup truck and put it back where it was parking.

6. The breach of security is on video tape and an embarrassment to Smith & Wesson which resulted in termination of the contract at renewal time. The prior contractor had the contract for twenty years.

## AFFIDAVIT OF MARY JENCO

On December 23, 2009, just before Christmas, I was at the Hampden County Courthouse. My son, Mark Jenco and my husband, Donald Jenco were represented by Attorney Frank Saia. As I understand it, my name was on the case. Prior to the hearing Attorney Saia approached me and asked me to sign a document. He informed me that absent signing this document he would not be able to proceed with representation of my family's interest. I called my husband to come to the Courthouse with a personal check to pay the fees Attorney Saia said were necessary. At the time of the signing of the document, I have no recollection of the hourly charges express in that document being filled in. I signed the document because Attorney Saia represented that this was a necessary condition of his representing us. I was told that the check that my husband brought and I gave him would secure his representation. It was my understanding that this payment secured his representation throughout this matter. Perhaps I was naïve or uninformed, but when I signed the document that was what was represented to me. Later there were requests by Attorney Saia for additional fees allegedly due. I was aware that my son was performing work on a project that Attorney Saia had some controlling interest in; the exact nature of that relationship was not ever explained to me by Attorney Saia. This statement represents the facts as I remember them and constitutes my best recollection of the events that occurred before the hearing.

Signed under the pains and penalties of perjury on this 6th day of August , 2013.

Mary Jenco

## COMMONWEALTH OF MASSACHUSETTS

Hampden ss.
Massachusetts

On this 6th day of August , 2013, before me, the undersigned notary public, personally appeared **Mary Jenco**, proved to me through satisfactory evidence of identification, which were MA Drivers License, to be the person whose name is signed on the preceding document, and acknowledged to me that **she** signed it voluntarily for its stated purpose.

Notary Public
8/26/2016
Commission Expires



**PioneerValley**
FEDERAL CREDIT UNION

#1

WMRX CHECK DISBURSED          12/24/09 11:42 AM 7101      1 OF 1 TRP 122 BR:01
                                                                      1040014
        7213        DONALD A JENCO                   EFF DATE:12/24/09

CASH RECVD:        0.00    CHECK RECVD:    0.00   TOTL RECVD:    0.00
CASH RETURNED:     0.00
CHECK RET:     28,000.00   TO: SAIA LAW FIRM  LLC          1040014

SFX TRAN     AMOUNT                    FEE      BALANCE
60S SWD    28,000.00                   0.00    4,659.40

CHECK TYPE:   CASHIER'S CHECK
CHECK NO:        1040014
CHECK AMT:    **$28,000.00**
              **SAIA LAW FIRM  LLC**

WMRX CHECK DISBURSED          12/24/09 11:42 AM 7101      1 OF 1 TRP 122 BR:01
                                                                      1040014
        7213        DONALD A JENCO                   EFF DATE:12/24/09

CASH RECVD:        0.00    CHECK RECVD:    0.00   TOTL RECVD:    0.00
CASH RETURNED:     0.00
CHECK RET:     28,000.00   TO: SAIA LAW FIRM  LLC          1040014

SFX TRAN     AMOUNT                    FEE      BALANCE
60S SWD    28,000.00                   0.00    4,659.40

**PioneerValley**
FEDERAL CREDIT UNION
NO. 1040014

**SAIA LAW FIRM  LLC**
FOR MARK & RENEE JENCO

---

OFFICIAL CHECK                              NO. 1040014

**PioneerValley**
FEDERAL CREDIT UNION                DATE  12/24/2009

                                          AMOUNT
PAY   **Twenty Eight Thousand Dollars and 00 cents   **$28,000.00**

TO THE   **SAIA LAW FIRM  LLC**
ORDER   **FOR MARK & RENEE JENCO**           DRAWER: Pioneer Valley Federal Credit Union
OF

ISSUED BY: MONEYGRAM PAYMENT SYSTEMS, INC.
P.O. BOX 9476 MINNEAPOLIS MN 55480
DRAWEE: The Bank of New York Mellon  Everett, MA        AUTHORIZED SIGNATURE

⑈ 1040014 ⑈ ⑆ 011007092 ⑆ 1600100668 56 ⑈

Billing to Mary Jenco          January 4, 2010

RE: CNH v. Mary Jenco

Dec. 15, 2009  preparation for Court Motion          2.5 hours

Dec. 16, 2009 Court Appearance  on Motion          3.5

Preparation and research          10.5
Answer and Counterclaim          9.5
Filing in court   Dec 23, 200          0.5

Total  hours          2 6 .5
 Rate          X $350.00

Total billing          = $9,275.00
Retainer          1,500.00          to Sara Law Firm LLC
Balance taken from escrow account          7,775.00

3000 to FMS
refund of Loan

Day spent going to Court

_____

(s TC)

2018

Civil case

Seven Thousand Seven Hundred Seventy-Five and No/100

To: Sara Law Firm LLC          Mary Jenco          7775.00
    106 State Street          legal fee
    Springfield MA 01103          for 1-4-10

Frank R Sara
Trustee

**SAIA LAW FIRM, LLC**
273 ▮▮ State Street
Springfield, Massachusetts 01103



Attorneys:
Frank R. Saia, J.D.
Terry M. Ford, Esq.

Telephone: (413) 736-3611
1-800-LAWSAIA
Fax: (413) 736-4531
E-mail: SaiaLawFirm@hotmail.com

February 9, 2010

Mr. Jenco
19 Downey Street
Chicopee, MA 01020

RE:   $28,000.00 Payment for Mark Jenco

Dear Mr. Jenco:

Enclosed please find a print out of the payments on Mark Jenco's account. Please note the current balance is $10,225.00.

Thank you.

Sincerely,
SAIA LAW FIRM, LLC

Frank R. Saia, J.D.
Attorney for Mark Jenco

FRS/ram

*Full Service Law Firm*
*Since 1979*

SAIA LAW FIRM, PLLC

2/8/2010 3:11 PM

Register: IOLTA:Jenco

From 01/01/2010 through 02/08/2010

Sorted by: Date, Type, Number/Ref

| Date | Number | Payee | Account | Memo | Payment | C | Deposit | Balance |
|------|--------|-------|---------|------|---------|---|---------|---------|
| 01/04/2010 | 2218 | SAIA LAW FIRM, L... | IOLTA | Legal Fee | 7,775.00 | | | 20,225.00 |
| 02/08/2010 | 2253 | MarkJ Jenco | IOLTA | Loan | 10,000.00 | | | 10,225.00 |

# SAIA LAW FIRM, LLC
## 106 State Street
## Springfield, Massachusetts 01103



Attorneys:
Frank R. Saia, J.D.
Terry M. Ford, Esq.

Telephone: (413) 736-3611
1-800-LAWSAIA
Fax: (413) 736-4531
E-mail: SaiaLawFirm@hotmail.com

Memo            May 25, 2010

To: Mark P. Jenco  5 Newell St. Chicopee, Ma
    I do not agree that current total due you is $108,000. and we have nothing
to negotiate if you are standing by this claim.
RE: PROPOSED AGREEMENT  TO BARTER LOAM AND SAND FOR SERVICES TO BE RENDERED
    TOTAL DUE SAIA AND JENCO TO DATE IS EQUIVALENT CASH AND BARTER
    FUTURE SERVICES  TO BE BARTERED AS FOLLOWS AT THE FOLLOWING RATES:

| Saia provides | Jenco provides |
|---|---|
| Complaint services to Don & Mary Jenco CNH | |
| "          "          "   "  "  "    " JPMorgan | |
| Cash to Milton Caterpillar | Cash from Don & Mary Jenco |
| Complaint Services to Mark Jenco Vs. L & L | |
| Loam | Tree cutting |
| Sand | Mulch making & Spreading |
| | Demolition of 2,4,5,6,7,12 |
| | 16,17,19,20 and 2 foundation |
| Modular Home | |
| Site in Wilbraham | |
| Site in Westfield | |
| Site in E. Lyme, Ct | |
| Zoning SPecial PErmit CCRC 88 Units | Presentation |
| | Removal of Debris and |
| | Grinding of  Concrete |

    It is the intent of the parties to use the lowest rate for legal services availab
and the lowest rate for consultant and property maintence  and excavating service
The rate for loading of loam and screening  is:
The rate for loading of Title V sand is
The rate for mulching of tree limbs and spreading is:
The payment to owner of LOAM is:
The Payment to owner of SAND IS:
The Cost to Owner of Tree Removal is:


We need to get some independent third party help on valuing these  services
so that a proper Bartering arrangement STARTING FROM SCRATCH" can be negotiated.

Sincerely,



Frank R. Saia



*Full Service Law Firm*
*Since 1979*

# GREG T. SCHUBERT

## COUNSELLOR AT LAW

1365 MAIN STREET
SPRINGFIELD, MA  01103

TEL. 413-746-1313   FAX. 413-746-3102
E-MAIL: MURDERONE@MSN.COM

Mr. Mark Jenco
5 Newell Street
Chicopee, MA 01020

RE: Mark Jenco v Frank Saia

Dear Mark:

This letter will serve to confirm our discussions regarding the fee to be paid in connection with your case. You will pay an engagement fee of $10,000.00 of that $5,000.00 will be paid immediately towards the review of your case file and any meetings held thereto. Full credit of the $10,000 will go against the 1/3 contingency if/when awarded; the remaining $5,000.00 will be held in escrow for use in acquiring deposition subpoenas and testimony thereto as well as expert testimony as necessary.

The total retainer ($10,000) will cover the preparation of your case, office conferences, legal research, meetings with experts if necessary (excluding the fees charged by the experts), telephone conferences and correspondence. If we need the services of an expert or an investigator additional sums will be required to pay their fees. I will not engage any expert without your prior knowledge and assent.

It is understood that I am agreeing to represent you on the terms and conditions set forth herein. All payments must be made in a timely fashion as I cannot underwrite the costs or fees associated with defense of this matter.

Please review the contents of this letter and sign your acknowledgement where indicated and return the original to me.

Thank you for your attention to this matter.

Very truly yours,

Greg T. Shubert
Counsellor at Law

May 6, 2013


I, **Mark Jenco** have read the foregoing.  I understand the terms and conditions hereof and agree to make the payments as provided for herein.

Mark Jenco

may 23, 2013
Brenda McKennie

June 26, 2013

*rec'd 6-28-2013*

Greg T. Schubert, Esq.
1365 Main Street
Springfield, MA 01103

RE:   Marc Jenco

Dear Attorney Schubert:

Please be advised that the name of our current malpractice carrier is Imperium Insurance
Company and our malpractice carrier in 2011 was Darwin Insurance Company.

As early as February 2011 in a meeting with Mr. Jenco and counsel, Mr. Saia was
threatened with a malpractice claim. Yet several months later he filed bankruptcy using
different counsel. Nowhere in his Ch. 13 Bankruptcy did he list his claims or his
potential claim against Mr. Saia and or Saia Law Firm. Case law would hold through the
theory of collateral estoppel that Mr. Jenco is barred from bringing a claim. It would
also seem to suggest Mr. Jenco knowing he intended to bring a claim against Mr. Saia
that Mr. Jenco perjured himself on his bankruptcy petition and at his 341 Meeting of
Creditor, in which it is typically asked if he listed all his assets and if he has any claims
against anybody.

Please be further advised that any asset of Mr. Jenco at the time of filing is part of the
bankruptcy estate and any attorney hired to recover funds for the bankruptcy estate needs
to be appointed by the Court. Otherwise, counsel has no standing.

Sincerely,

Frank R. Saia, J.D.
273 State Street
Springfield, MA 01103
Tel. (413) 736-3611

# GREG T. SCHUBERT

## COUNSELLOR AT LAW

**1365 MAIN STREET**
**SPRINGFIELD, MA 01103**

**TEL. 413-746-1313   FAX. 413-746-3102**
**E-MAIL: MURDERONE@MSN.COM**

Mr. Mark Jenco
5 Newell Street
Chicopee, MA 01020

RE: Mark Jenco v Frank Saia

Dear Mark:

This letter will serve to confirm our discussions regarding the fee to be paid in connection with your case. You will pay an engagement fee of $10,000.00 of that $5,000.00 will be paid immediately towards the review of your case file and any meetings held thereto. Full credit of the $10,000 will go against the 1/3 contingency if/when awarded; the remaining $5,000.00 will be held in escrow for use in acquiring deposition subpoenas and testimony thereto as well as expert testimony as necessary.

The total retainer ($10,000) will cover the preparation of your case, office conferences, legal research, meetings with experts if necessary (excluding the fees charged by the experts), telephone conferences and correspondence. If we need the services of an expert or an investigator additional sums will be required to pay their fees. I will not engage any expert without your prior knowledge and assent.

It is understood that I am agreeing to represent you on the terms and conditions set forth herein. All payments must be made in a timely fashion as I cannot underwrite the costs or fees associated with defense of this matter.

Please review the contents of this letter and sign your acknowledgement where indicated and return the original to me.

Thank you for your attention to this matter.

Very truly yours,

Greg T. Schubert
Counsellor at Law

May 6, 2013

I, **Mark Jenco** have read the foregoing. I understand the terms and conditions hereof and agree to make the payments as provided for herein.

Mark Jenco

May 23, 2013
Brenda M. Glennie

# SAIA LAW FIRM, LLC

273 State Street
Springfield, Massachusetts 01103

Attorneys:
Frank R. Saia, J.D.
Terry M. Ford, Esq.



Telephone: (413) 736-3611
1-800-LAWSAIA
Fax: (413) 736-4531
E-mail: SaiaLawFirm@hotmail.com

September 8, 2010

Mr. Donald & Mary Jenco
19 Downey Street
Chicopee, MA 01020

RE:   JP Morgan Chase Bank, NA vs. Mary Jenco, Donald A. Jenco
Docket No. HDCV2010-00297-B

Dear Mr. & Mrs. Jenco:

I believe it is time for me to represent only Donald & Mary Jenco and for Mark Jenco to get his own attorney as I believe JP Morgan chase Bank, NA will succeed in repossession of this vehicle.

Thank you.

Sincerely,
SAIA LAW FIRM, LLC

Frank R. Saia, J.D.

FRS/ram

cc Mark Jenco

PS CNH Capital's Attorney called today and it appears he will be doing the same type Motion in the near future to recoup that vehicle.

*Full Service Law Firm*
*Since 1979*

# SAIA LAW FIRM, LLC

Document Page 1 of 1

273 State Street
Springfield, Massachusetts 01103



Attorneys:
Frank R. Saia, J.D.
Terry M. Ford, Esq.

Telephone: (413) 736-3611
1-800-LAWSAIA
Fax: (413) 736-4531
E-mail: SaiaLawFirm@hotmail.com

September 20, 2010

Mr. Mark Jenco
5 Newell Street
Chicopee, MA

RE:    JP Morgan Chase vs. Mary and Donald Jenco

Dear Mark:

I do not accept the fact that I owe you $108,000.00. I object to your claim.

There is no counterclaim as you did not fail to obtain the Smith & Wesson contract. The property damage will be reflected in the auction price after they reposes the vehicle creating a deficiency difference between the debt owed and the auction selling price, which your parents will be obligated to pay. My proposal is your parents use a certificate of deposit to borrow $30,000.00 at 6.25% percent interest. The representative at People's United Bank (Bank of Western Massachusetts) said on Friday, September 17, 2010 that they would loan your parent's 90% of the face amount of any certificate of deposit. Your parents can then profit by then charging $1,100.00 a month for the term of the original note. Therefore your parents' counterclaim for damages for the truck can be heard in due course and would be used as a wedge to make the lender accept less than the loan balance.

Sincerely,
SAIA LAW FIRM, LLC

Frank R. Saia, J.D.

PS enclosed is a copy of my letter in which I said I cannot represent you due to a conflict of interest as your mother and father would have a claim against you. I trust you understand.

PPS the appeal would not stop the repossession.

cc Donald & Mary Jenco

*Full Service Law Firm*
*Since 1979*



.

# OFFICE OF THE BAR COUNSEL
BOARD OF BAR OVERSEERS OF THE SUPREME JUDICIAL COURT

99 High Street
Boston, Massachusetts 02110
(617) 728-8750
Fax: (617) 482-2992
www.mass.gov/obcbbo



CONSTANCE V. VECCHIONE
BAR COUNSEL

August 28, 2013

Michael Fredrickson
General Counsel
Board of Bar Overseers
99 High Street
Boston, MA 02110

RE: BBO File No(s). C6-11-0062

Dear Mr. Fredrickson:

Enclosed for filing please find an affidavit of resignation signed by Frank R. Saia. Bar counsel requests a recommendation from the Board of Bar Overseers that the Supreme Judicial Court accept the affidavit of resignation as a disciplinary sanction.

Please place this matter on the agenda of the next monthly meeting of the Board of Bar Overseers.

Thank you for your attention to this matter.

Very truly yours,

Susan Strauss Weisberg
Assistant Bar Counsel

SSW/ac
Enclosure
cc:  Frank R. Saia, Esq.

RECEIVED

SEP 3 0 2013

MAURA S. DOYLE CLERK
OF THE SUPREME JUDICIAL COURT
FOR SUFFOLK COUNTY

AUG 2 6 2013

RECEIVED

AUG 2 8 2013

BOARD OF BAR
OVERSEERS

COMMONWEALTH OF MASSACHUSETTS
BOARD OF BAR OVERSEERS
OF THE SUPREME JUDICIAL COURT

AFFIDAVIT OF RESIGNATION
AS A DISCIPLINARY SANCTION BY FRANK R. SAIA
PURSUANT TO SUPREME JUDICIAL COURT RULE 4:01, § 15

I, Frank R. Saia, hereby state that I desire to resign from the practice of law in the
Commonwealth pursuant to S.J.C. Rule 4:01, § 15, as a disciplinary sanction, and I aver and
attest as follows:

1.      I was admitted to the Massachusetts bar on December 21, 1979.

2.      My resignation is freely and voluntarily rendered, I am not being subjected to
coercion or duress, and I am fully aware of the implications of submitting my resignation.  I
understand that, by submitting this affidavit of resignation, I have waived my rights to hearing
and to evidentiary proceedings before a hearing committee, the Board of Bar Overseers, and the
Supreme Judicial Court.

# OFFICE OF THE BAR COUNSEL
BOARD OF BAR OVERSEERS OF THE SUPREME JUDICIAL COURT
99 High Street
Boston, Massachusetts 02110
(617) 728-8750
Fax: (617) 482-2992
www.mass.gov/obobbo



CONSTANCE V. VECCHIONE
BAR COUNSEL

August 28, 2013

Michael Fredrickson
General Counsel
Board of Bar Overseers
99 High Street
Boston, MA 02110

**RECEIVED**

SEP 3 0 2013

MAURA S. DOYLE CLERK
OF THE SUPREME JUDICIAL COURT
FOR SUFFOLK COUNTY

RE: BBO File No(s). C6-11-0062

Dear Mr. Fredrickson:

Bar counsel requests a recommendation from the Board of Bar Overseers that the Supreme Judicial Court accept the affidavit of resignation as a disciplinary sanction.

Please place this matter on the agenda of the next monthly meeting of the Board of Bar Overseers.

Thank you for your attention to this matter.

Very truly yours,

Susan Strauss Weisberg
Assistant Bar Counsel

SSW/ac
Enclosure
cc: Frank R. Saia, Esq.

RECEIVED

SEP 3 0 2013

MAURA S. DOYLE CLERK
OF THE SUPREME JUDICIAL COURT
FOR SUFFOLK COUNTY

AUG 2 6 2013

RECEIVED

AUG 2 8 2013

BOARD OF BAR
OVERSEERS

COMMONWEALTH OF MASSACHUSETTS
BOARD OF BAR OVERSEERS
OF THE SUPREME JUDICIAL COURT

AFFIDAVIT OF RESIGNATION
AS A DISCIPLINARY SANCTION BY FRANK R. SAIA
PURSUANT TO SUPREME JUDICIAL COURT RULE 4:01, § 15

I, Frank R. Saia, hereby state that I desire to resign from the practice of law in the

Commonwealth pursuant to S.J.C. Rule 4:01, § 15, as a disciplinary sanction, and I aver and

attest as follows:

1.    I was admitted to the Massachusetts bar on December 21, 1979.

2.    My resignation is freely and voluntarily rendered. I am not being subjected to

coercion or duress, and I am fully aware of the implications of submitting my resignation. I

understand that, by submitting this affidavit of resignation, I have waived my rights to hearing

and to evidentiary proceedings before a hearing committee, the Board of Bar Overseers, and the

Supreme Judicial Court.

3.    I understand that if my resignation is accepted, my name will be stricken from the

roll of attorneys; my resignation will be made public and will be reported to courts and

disciplinary authorities in this and other jurisdictions; the judgment and any opinion of the Court

or a summary of the proceedings, including my identity and the factual and legal basis for the

sanction, will be published by the Board of Bar Overseers, sent to media outlets, and posted on

the board's Web site; I will not be eligible to apply for reinstatement before at least eight years

have passed from the effective date of the judgment of resignation; and I may never be reinstated

to the practice of law in the Commonwealth.

4.    I am aware that there is currently pending an investigation into allegations that I

engaged in misconduct including, among other things, failing to provide competent and diligent

representation to a client in a tort claim with the resulting entry of summary judgment against the

client; undertaking the client's appeal notwithstanding the deficiencies in my representation;

charging and collecting a clearly excessive fee for the appeal; and altering a fee agreement for the appeal after it was signed by the client. I am aware of allegations that my conduct resulted in violations of Mass. R. Prof. C. 1.1, 1.2(a), 1.3, 1.5(a), 1.7(b) and 8.4(c) and (h). I am also aware of allegations that the client's claim was ultimately saved by reversal on appeal because another lawyer wrote the appeal brief.

5.    I acknowledge that I have a history of discipline consisting of an informal admonition in 1993 for withholding a client's funds to satisfy a fee; a public censure in 1990 for conflict of interest, 6 Mass. Att'y Disc. R. 294 (1990); and a public reprimand in 2003 for charging and collecting a clearly excessive contingent fee without a written fee agreement, 19 Mass. Att'y Disc. R. 380 (2003).

6.    I do not wish to contest any bar discipline allegations now pending, and I understand that my suspension from practice would likely result if those allegations were litigated.

7.    I acknowledge freely and voluntarily that the material facts upon which the pending allegations are predicated, including the allegations set forth in paragraph 4 above, can be proved by a preponderance of the evidence and that a hearing committee, the board and the Court would conclude that I have engaged in the disciplinary violations cited in paragraph 4. I agree not to contest any of the facts and rule violations set forth in paragraph 4 in this or any other bar discipline or reinstatement proceeding in the Commonwealth or any other jurisdiction or in any proceedings for my admission to the bar of any jurisdiction.

8.    I understand and acknowledge that bar counsel will recommend that my affidavit of resignation be accepted as a disciplinary sanction effective on the date of entry of the Court's judgment accepting the resignation. I understand that I may also make recommendations about these matters but that neither the board nor the Court is bound to adopt such recommendations or

2

accept my resignation, that the board may recommend a different sanction, and that the court may discipline me without further proceedings.

9. I understand and acknowledge that I have the right to be represented by counsel in these proceedings. Although I have been advised that I could be assisted in locating counsel and that such representation might be available at reduced or no cost, I have voluntarily chosen to proceed without counsel.

10. I understand and acknowledge that bar counsel has made no representations or promises to me whatsoever regarding the effects of executing this affidavit other than what is stated in the affidavit.

11. I am not now suffering from any disability or condition that would impair my understanding of the allegations and proceeding against me, the voluntariness of this action, or my full understanding of the consequences of the execution of this affidavit.

12. I am currently admitted to practice in the Commonwealth of Massachusetts, the U.S. District Court for the District of Massachusetts, the U.S. Court of Appeals for the First Circuit, the U. S. Supreme Court, and no other jurisdictions.

13. I hereby request that I be permitted to resign from the practice of law in the Commonwealth of Massachusetts as a disciplinary sanction. I understand that this affidavit of resignation will not be impounded.

Signed and sworn to under the penalties of perjury this 23 day of August, 2013.

Frank R. Sais

Frank R. Sais

# BOARD OF BAR OVERSEERS
*of the Supreme Judicial Court*
99 HIGH STREET
BOSTON, MASSACHUSETTS 02110
617-728-8700
Fax: 617-482-8000
www.mass.gov/obcbbo

BOARD OF BAR OVERSEERS
W. LEE H. DUNHAM, CHAIR
MARY B. STROTHER, VICE CHAIR
LISA G. ARROWOOD
ELISABETH A. DITOMASSI
LAURENCE D. FITZMAURICE
PAUL F. HANLEY
THOMAS A. KENEFICK, III
FRANCIS P. KEOUGH
DAVID B. KRIEGER, M.D.
MAUREEN MULLIGAN
DONNA JALBERT PATALANO
REGINA ROMAN

GENERAL COUNSEL
MICHAEL FREDRICKSON
ASSOCIATE GENERAL COUNSEL
KAREN D. O'TOOLE
ASSISTANT GENERAL COUNSEL
PAUL M. RESENDES
ASSISTANT GENERAL COUNSEL
JEFFREY D. WOOLF
ASSISTANT GENERAL COUNSEL
MERLE R. HASS

In accordance with the Rules of the Board of Bar Overseers, at its meeting held September 23, 2013, the Board of Bar Overseers considered the record in re **Frank R. Saia** (C5-2011-0062), and by unanimous consent, it was

>   VOTED:  to recommend to the Supreme Judicial Court
>   that Mr. Saia's affidavit of resignation be
>   accepted as a disciplinary sanction effective on
>   the date of entry of the order.

(Eleven members were present.)

Regina Roman
Secretary



| | | |
|---|---|---|
| **Bar Counsel, Petitioner** | | Susan Strauss Weisberg, Assistant Bar Counsel<br>Office of the Bar Counsel<br>99 High Street, Second Floor<br>Boston, MA 02110<br>617-728-8750 |
| | | Constance Vecchione, Bar Counsel<br>Office of the Bar Counsel<br>99 High Street, Second Floor<br>Boston, MA 02110<br>617-728-8750 |

| | | | |
|---|---|---|---|
| **Respondent** | **BBO# 437920** | **Counsel** | **BBO#** |
| Frank R Saia<br>Saia Law Firm LLC<br>273 State Street<br>Springfield, MA   01103<br><br>413-736-3611 | | | |

| # | Docket Date | Docket | Description |
|---|---|---|---|
| 1 | 08/28/13 | RESBD | Affidavit of Resignation |
| 2 | 09/23/13 | BDA | On Bbo Agenda |
| 3 | 09/23/13 | BRESG | Board Recommends Acceptance of Resignation |
| 4 | 09/27/13 | VLET | Letter Serving Vote Sent |

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, SS.                                    SUPREME JUDICIAL COURT
                                               FOR SUFFOLK COUNTY
                                               NO:   BD-2013-095

IN RE: Frank R. Saia

## JUDGMENT ACCEPTING AFFIDAVIT OF RESIGNATION AS A DISCIPLINARY SANCTION

This matter came before the Court, Gants, J., on an Affidavit of Resignation submitted by Frank R. Saia pursuant to S.J.C. Rule 4:01(15), a letter from assistant bar counsel to general counsel of the Board of Bar Overseers (Board) requesting that the affidavit of resignation be accepted as a disciplinary sanction, and the Recommendation and Vote of the Board filed by the Board on September 30, 2013. Upon consideration thereof, it is ORDERED and ADJUDGED that:

1. the Affidavit of Resignation of Frank R. Saia be accepted as a disciplinary sanction effective immediately upon the entry of this Judgment, and the lawyer's name is forthwith stricken from the Roll of Attorneys.

It is FURTHER ORDERED that:

2.    Within fourteen (14) days of the date of entry of this
Judgment, the lawyer shall:

a)   file a notice of withdrawal as of the effective
date of the resignation with every court, agency, or
tribunal before which a matter is pending, together with a
copy of the notices sent pursuant to paragraphs 2(c) and
2(d) of this Judgment, the client's or clients' place of
residence, and the case caption and docket number of the
client's or clients' proceedings;

b)   resign as of the effective date of the resignation
all appointments as guardian, executor, administrator,
trustee, attorney-in-fact, or other fiduciary, attaching to
the resignation a copy of the notices sent to the wards,
heirs, or beneficiaries pursuant to paragraphs 2(c) and
2(d) of this Judgment, the place of residence of the wards,
heirs, or beneficiaries, and the case caption and docket
number of the proceedings, if any;

c)   provide notice to all clients and to all wards,
heirs, and beneficiaries that the lawyer has resigned; that
he is disqualified from acting as a lawyer after the
effective date of the resignation; and that, if

not represented by co-counsel, the client, ward, heir, or
beneficiary should act promptly to substitute another
lawyer or fiduciary or to seek legal advice elsewhere,
calling attention to any urgency arising from the
circumstances of the case;

d)   provide notice to counsel for all parties (or, in
the absence of counsel, the parties) in pending matters
that the lawyer has resigned and, as a consequence, is
disqualified from acting as a lawyer after the effective
date of the resignation;

e)   make available to all clients being represented
in pending matters any papers or other property to which
they are entitled, calling attention to any urgency for
obtaining the papers or other property;

f)   refund any part of any fees paid in advance that
have not been earned; and

g)   close every IOLTA, client, trust or other
fiduciary account and properly disburse or otherwise
transfer all client and fiduciary funds in his possession,
custody or control.

All notices required by this paragraph shall be served by
certified mail, return receipt requested, in a form approved by
the Board.

3.   Within twenty-one (21) days after the date of entry of

this Judgment, the lawyer shall file with the Office of the Bar
Counsel an affidavit certifying that the lawyer has fully
complied with the provisions of this Judgment and with bar
disciplinary rules.  Appended to the affidavit of compliance
shall be:

a)    a copy of each form of notice, the names and
addresses of the clients, wards, heirs, beneficiaries,
attorneys, courts and agencies to which notices were sent,
and all return receipts or returned mail received up to the
date of the affidavit.  Supplemental affidavits shall be
filed covering subsequent return receipts and returned
mail.  Such names and addresses of clients shall remain
confidential unless otherwise requested in writing by the
lawyer or ordered by the court;

b)    a schedule showing the location, title and account
number of every bank account designated as an IOLTA,
client, trust or other fiduciary account and of every
account in which the lawyer holds or held as of the entry
date of this Judgment any client, trust or fiduciary funds;

c)    a schedule describing the lawyer's disposition of
all client and fiduciary funds in the lawyer's possession,

custody or control as of the entry date of this Judgment or thereafter;

    d)  such proof of the proper distribution of such funds and the closing of such accounts as has been requested by the bar counsel, including copies of checks and other instruments;

    e)  a list of all other state, federal and administrative jurisdictions to which the lawyer is admitted to practice; and

    f)  the residence or other street address where communications to the lawyer may thereafter be directed.

The lawyer shall retain copies of all notices sent and shall maintain complete records of the steps taken to comply with the notice requirements of S.J.C. Rule 4:01, § 17.

    4.  Within twenty-one (21) days after the entry date of this Judgment, the lawyer shall file with the Clerk of the Supreme Judicial Court for Suffolk County:

    a)  a copy of the affidavit of compliance required by paragraph 3 of this Judgment;

    b)  a list of all other state, federal and administrative jurisdictions to which the lawyer is admitted to practice; and

c)   the residence or other street address where

communications to the lawyer may thereafter be directed.

By the Court, (Gants, J.)

Assistant Clerk

Entered:  October 8, 2013.

June 26, 2013

*rec'd 6-28-2013*

Greg T. Schubert, Esq.
1365 Main Street
Springfield, MA 01103

RE:   Marc Jenco

Dear Attorney Schubert:

Please be advised that the name of our current malpractice carrier is Imperium Insurance
Company and our malpractice carrier in 2011 was Darwin Insurance Company.

As early as February 2011 in a meeting with Mr. Jenco and counsel, Mr. Saia was
threatened with a malpractice claim.  Yet several months later he filed bankruptcy using
different counsel.  Nowhere in his Ch. 13 Bankruptcy did he list his claims or his
potential claim against Mr. Saia and or Saia Law Firm.  Case law would hold through the
theory of collateral estoppel that Mr. Jenco is barred from bringing a claim.   It would
also seem to suggest Mr. Jenco knowing he intended to bring a claim against Mr. Saia
that Mr. Jenco perjured himself on his bankruptcy petition and at  his 341 Meeting of
Creditor, in which it is typically asked if he listed all his assets and if he has any claims
against anybody.

Please be further advised that any asset of Mr. Jenco at the time of filing is part of the
bankruptcy estate and any attorney hired to recover funds for the bankruptcy estate needs
to be appointed by the Court.  Otherwise, counsel has no standing.

Sincerely,

Frank R. Saia, J.D.
273 State Street
Springfield, MA  01103
Tel. (413) 736-3611

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re    Mark P. Jenco | Chapter: 13 |
| | Case No: 11-31097 |
| Debtor | Judge Henry J. Boroff |

## NOTICE OF NONEVIDENTIARY HEARING

**PLEASE TAKE NOTICE** that a **HEARING** will be held on 10/16/13 at 11:00 AM before the Honorable Judge Henry J. Boroff United States Courthouse, 300 State Street, Berkshire Courtroom, Third Floor, Springfield, MA 01105-2925 to consider the following:

> [116] Application filed by Debtor Mark P. Jenco to Employ Greg T. Schubert as special counsel.

### OBJECTION/RESPONSE DEADLINE:

If no deadline is set, the objection/response deadline shall be governed by the Federal Rules of Bankruptcy Procedure (FRBP) and the Massachusetts Local Bankruptcy Rules (MLBR). If no objection/response is timely filed, the Court, in its discretion, may cancel the hearing and rule on the motion without a hearing or further notice. See MLBR 9013-1(f).

### THE MOVING PARTY IS RESPONSIBLE FOR:

1. Serving a copy of this notice upon all parties entitled to notice forthwith; and

2. Filing a certificate of service with respect to this notice seven (7) days after the date of issuance set forth below. If the hearing date is less than seven (7) days from the date of issuance, the certificate of service must be filed no later than the time of the hearing. **If the movant fails to timely file a certificate of service, the court may deny the motion without a hearing.**

### NOTICE TO ALL PARTIES SERVED:

1. <u>Your rights may be affected.</u> You should read this notice, the above referenced pleading and any related documents carefully and discuss them with your attorney, if you have one. If you do not have an attorney, you may wish to consult one.

2. Any request for a continuance **MUST** be made by **WRITTEN MOTION** filed and served at least one (1) business day prior to the hearing date. See MLBR 5071-1.

3. The above hearing shall be <u>nonevidentiary.</u> If, in the course of the nonevidentiary hearing, the court determines the existence of a disputed and material issue of fact, the court will schedule an evidentiary hearing. <u>If this is a hearing under section 362</u>, it will be a consolidated preliminary and final nonevidentiary hearing unless at the conclusion thereof the court schedules an evidentiary hearing.

Date:9/27/13

By the Court,

Catherine Leas
Deputy Clerk
413-785-6908

Ally Financial
P. O. Box 130424
Roseville, MN 55113

Ally Financial
P. O. Box 130424
Roseville, MN 55113

BAC Home Loans Servicing, LP
7105 Corporate Drive
Mail Stop PTX-C-35
Plano, TX 75024

BAC Home Loans Servicing, LP
c/o Harmon Law Offices, P.C.
150 California Street
Newton, MA 02458

BAC Home Loans Servicing, LP
c/o Richard T. Mullligan, Esq.
Harmon Law Offices, P.C.
P. O. Box 610345
Newton Highlands, MA 02461

Capital One Bank (USA), N.A.
P. O. Box 30281
Salt Lake City, UT 84130-0281

Charter Communications NE
c/o Credit Management
4200 International Parkway
Carrollton, TX 75007

Lake Equipment Leasing, Inc.
64 Main Street, Second Floor
Millburn, NJ 07041

Renata L. Jenco
5 Newell Street
Chicopee, MA 01013

Southworth-Milton
100 Quarry Drive
Milford, MA 01757

CNH Capital America LLC
c/o Charles J. Domestico, Esq.
Vincent M. Domestico, Esq.
161 Worcester Road
Framingham, MA 01701

Bank of America, N.A.
Mail Stop CA6-919-01-23
400 National Way
Simi Valley, CA 93065

Capital One Bank (USA), N.A.
P. O. Box 71083
Charlotte, NC 28272-1083

Massachusetts Department of
Revenue, Bankruptcy Unit
P. O. Box 9564
Boston, MA 02114

Kathleen Ann Moore Kocot, Esq.
P.O. Box 162
Agawam, MA 01001

Internal Revenue Service
P.O. Box 7346
Philadelphia, PA 19101-7346

Greg T. Schubert, Esq.
1365 Main Street, #250
Springfield, MA 01103

UNITED STATES BANKRUPTCY COURT DISTRICT OF MASSACHUSETTS
Proceeding Memorandum/Order of Court

In Re: Mark P. Jenco                    Case Number: 11-31097              Ch: 13

MOVANT/APPLICANT/PARTIES:
#116 Application of Debtor to Employ Greg T. Schubert as Special Counsel

OUTCOME:

_____Granted_____Denied_____Approved_____ Sustained

_____Denied_____Denied without prejudice_____Withdrawn in open court_____Overruled

_____OSC enforced/released

_____Continued to:_____For:_____

_____Formal order/stipulation to be submitted by:_____Date due:_____

_____Findings and conclusions dictated at close of hearing incorporated by reference

_____Taken under advise ment: Brief(s) due_____From_____

                               Response(s) due_____From_____

_____Fees allowed in the amount of: $_____Expenses of: $_____

_____No appearance/response by:_____

__✔__DECISION SET OUT MORE FULLY BY COURT AS FOLLOWS:


GRANTED.


IT IS SO NOTED:                         IT IS SO ORDERED:

                                        _____  Dated: 10/16/2013
_____
Courtroom Deputy

# SAIA LAW FIRM, LLC

273 State Street
Springfield, Massachusetts 01103

Attorneys:
Frank R. Saia, J.D.
Terry M. Ford, Esq.



Telephone:  (413) 736-3611
                    1-800-LAWSAIA
Fax:  (413) 736-4531
E-mail: SaiaLawFirm@hotmail.com

September 8, 2010

Mr. Donald & Mary Jenco
19 Downey Street
Chicopee, MA  01020

RE:   JP Morgan Chase Bank, NA vs. Mary Jenco, Donald A. Jenco
        Docket No.: HDCV2010-00297-B

Dear Mr. & Mrs. Jenco:

I believe it is time for me to represent only Donald & Mary Jenco and for Mark Jenco to
get his own attorney as I believe JP Morgan chase Bank, NA will succeed in repossession
of this vehicle.

Thank you.

Sincerely,
SAIA LAW FIRM, LLC

Frank R. Saia, J.D.

FRS/ram

cc Mark Jenco

PS CNH Capital's Attorney called today and it appears he will be doing the same type
Motion in the near future to recoup that vehicle.

*Full Service Law Firm*
*Since 1979*

# SAIA LAW FIRM, LLC

273 State Street
Springfield, Massachusetts 01103



**Attorneys:**
Frank R. Saia, J.D.
Terry M. Ford, Esq.

Telephone:  (413) 736-3611
                    1-800-LAWSAIA
Fax: (413) 736-4531
E-mail: SaiaLawFirm@hotmail.com

September 20, 2010

Mr. Mark Jenco
5 Newell Street
Chicopee, MA

RE:    JP Morgan Chase vs. Mary and Donald Jenco

Dear Mark:

I do not accept the fact that I owe you $108,000.00.  I object to your claim.

There is no counterclaim as you did not fail to obtain the Smith & Wesson contract.  The property damage will be reflected in the auction price after they reposes the vehicle creating a deficiency difference between the debt owed and the auction selling price, which your parents will be obligated to pay.  My proposal is your parents use a certificate of deposit to borrow $30,000.00 at 6.25% percent interest.  The representative at People's United Bank (Bank of Western Massachusetts) said on Friday, September 17, 2010 that they would loan your parent's 90% of the face amount of any certificate of deposit.  Your parents can then profit by then charging $1,100.00 a month for the term of the original note.  Therefore your parents' counterclaim for damages for the truck can be heard in due course and would be used as a wedge to make the lender accept less than the loan balance.

Sincerely,
SAIA LAW FIRM, LLC

Frank R. Saia, J.D.

PS enclosed is a copy of my letter in which I said I cannot represent you due to a conflict of interest as your mother and father would have a claim against you.  I trust you understand.

PPS the appeal would not stop the repossession.

cc Donald & Mary Jenco

*Full Service Law Firm*
*Since 1979*